**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LINDA WADENSTEN, Individually and<br>p.p.a. MAXIMUS WADENSTEN<br>Plaintiffs, | : | |
| v. | : | C.A. No. 04-326S |
| SOUTH COUNTY HOSPITAL;<br>PAMELA BURLINGAME, RNP;<br>ROBERT J. CASCI, JR., D.O.;<br>TIMOTHY DRURY, M.D.<br>RHODE ISLAND EMERGENCY<br>PHYSICIANS, INC.;<br>JOHN DOE, ALIAS; JANE DOE, ALIAS;<br>JOHN DOE CORPORATION, ALIAS<br>Defendants. | : | |

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER WITH RESPECT TO DEFENDANT SOUTH COUNTY HOSPITAL'S AMENDED REQUEST FOR INSPECTION**

NOW COMES plaintiff Linda Wadensten and pursuant to Fed. R. Civ. P. 26(c), plaintiff respectfully moves this Honorable Court for a protective order prohibiting the hospital from inspecting areas of the Wadenstens' home, their pets, and other items within their home that have no relevance to any claim or defense of any party to this action.

As such, plaintiff's request that Court limit the scope of inspection of the Wadensten home and items contained therein as follows:

(1) The area of the house where Max hit his head on the floor (which encompasses the area in which he was later bathed and the area where the dogs' crates were located);
(2) Max Wadensten's stroller;
(3) The flashlight used by Linda Wadensten as identified in her answer to interrogatory # 4;
(4) The dog crates that plaintiff now has in her possession (one of which is the same one that was present in the Wadensten home on the day that Max was taken to South County Hospital); and
(5) As their behavior in the course of any "inspection" over one year after the day that Max was taken to the hospital after striking his head at home—particularly in the presence of strangers—will not be as it was in October 2003, Plaintiff will not present her dogs for "inspection."

Additionally, plaintiff requests that the Court's protective order express the following, reasonable conditions on the conduct of the inspection:

(1) Inspection to be conducted on a Monday morning (so as not to disrupt Max's therapy schedule);
(2) Defendant must identify all persons that defendant proposes will be present at the inspection;
(2) Inspection to be limited in time to no more than 2 hours; and,
(3) Other than placing the dog crates in the approximate location where they were on the day that Max was taken to the hospital, plaintiff will not assist defendant in the inspection in any way; in particular, plaintiff will not, as defendant requests, attempt to place the stroller "in the location where it was located when [Max was] removed * * * from the stroller on October 25, 2003" or otherwise re-create the scene in the area where Max struck his head on the floor of the Wadensten house.

Plaintiff's motion for protective order is supported by an accompanying memorandum.

Plaintiff,
By her Attorneys,

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

## RULE 26(c) CERTIFICATION

The movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

**CERTIFICATION**

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 23 day of June, 2005 by hand delivery

Jay Elias, Esq.
Paul F. Galamaga, Esq.
Ratcliffe, Burke, Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

Mark T. Nugent, Esq.
Paul V. Sullivan, Esq.
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

Jennifer Plouston

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LINDA WADENSTEN, Individually and p.p.a. MAXIMUS WADENSTEN Plaintiffs, | : | |
| v. | : | C.A. No. 04-326S |
| SOUTH COUNTY HOSPITAL; PAMELA BURLINGAME, RNP; ROBERT J. CASCI, JR., D.O.; TIMOTHY DRURY, M.D. RHODE ISLAND EMERGENCY PHYSICIANS, INC.; JOHN DOE, ALIAS; JANE DOE, ALIAS; JOHN DOE CORPORATION, ALIAS Defendants. | : | |

FILED JUN 23 2005

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER WITH RESPECT TO DEFENDANT SOUTH COUNTY HOSPITAL'S AMENDED REQUEST FOR INSPECTION**

## INTRODUCTION

Now before the Court is plaintiff Linda Wadensten's motion for protective order with respect to those parts of defendant South County Hospital's amended request to inspect areas of the Wadenstens' home, their pets, and other items within their home that have no relevance to any claim or defense of any party to this action. (Defendant's Amended Request for Inspection is attached hereto and marked Exhibit A.)

The Court ought to grant plaintiff's motion for a protective order as to those parts of the request that seek to "inspect" the Wadenstens' pet dogs, to rummage through virtually

the entire Wadensten home, and to have plaintiff re-create for defendant the scene of the area in which Max struck his head on the day that he was taken to the hospital.

## FACTS AND TRAVEL

On October 25, 2003, Max Wadensten, then eight-months old, was brought to the Emergency Department at South County Hospital after his head hit a hard, tile, floor at home. He was triaged as "urgent" at reception and then seen by a nurse-practitioner, defendant Burlingame for evaluation and treatment. According to defendant Burlingame's answers to interrogatories, "X-ray [of the skull] was not taken because I was able to palpate the skull directly under the site of injury and did not find evidence of depressed or linear skull fracture." The record documenting Burlingame's evaluation and discharge was co-signed by defendant Timothy Drury, M.D., the emergency department physician responsible for supervising the care provided by Burlingame. Dr. Drury did not see the child prior to discharge. At the time of this first visit, Max had an undiagnosed skull fracture and a developing intracranial bleed. His mother was instructed by defendant Burlingame that Max should be allowed to sleep for the next two hours and to watch for "unusual breathing, vomiting." When he was difficult to awaken after his two hour nap, his mother and nanny returned with him to South County Hospital. The bleed was diagnosed at that time and Max was transported by MediVac to Hasbro Children's Hospital in Providence. As a result of a massive bleed, necessary surgery and swelling, Max is left with marked cognitive and developmental delays and impaired vision and movement on his left side.

Claiming that they sustained and will suffer significant damages as a proximate result of negligence by Dr. Drury, Dr. Casci, Nurse Practitioner Burlingame, and the hospital, Max

and his mother brought this action against them. In the complaint, plaintiffs further claimed that they suffered damages as a proximate result of the defendant hospital's violation of EMTALA.

On June 10, 2005, the defendant hospital served an amended request for inspection on plaintiff seeking, in essence, to inspect: (a) the entire premises of plaintiffs' home (inside and out); (b) Max's stroller ("placed in the location where it was located when [Max was] removed * * * from the stroller on October 25, 2003"); (c) a flashlight used by Mrs. Wadensten to check Max; (d) the Wadenstens' "two dogs;" and (d) the "dogs' crates" ("placed in the location where they were placed on October 25, 2003").

Notwithstanding the fact that the manner in which Max sustained the injury that brought him to South County Hospital in October 2003, is immaterial to the issues whether the defendant physicians, nurse practitioner, and hospital negligently treated Max and violated EMTALA, plaintiff informed counsel for the hospital that the following limited <u>scope of inspection</u> of the Wadensten home and items contained therein would be permitted:

(1) The area of the house where Max hit his head on the floor (which encompasses the area in which he was later bathed and the area where the dogs' crates were located);

(2) Max Wadensten's stroller;

(3) The flashlight used by Linda Wadensten as identified in her answer to interrogatory # 4;

(4) The dog crates that plaintiff now has in her possession (one of which is the same one that was present in the Wadensten home on the day that Max was taken to South County Hospital); and

(5) As their behavior in the course of any "inspection" over one year after the day that Max was taken to the hospital after striking his head at home—particularly in the presence of strangers—will not be as it was in October 2003, Plaintiff will not present her dogs for "inspection."

In addition to this limitation on the scope of the inspection, reasonable conditions pursuant to which plaintiff would agree to permit the requested inspection are:

(1) Inspection to be conducted on a Monday morning (so as not to disrupt Max's therapy schedule);

(2) Defendant must identify all persons that defendant proposes will be present at the inspection;

(2) Inspection to be limited in time to no more than 2 hours; and,

(3) Other than placing the dog crates in the approximate location where they were on the day that Max was taken to the hospital, plaintiff will not assist defendant in the inspection in any way; in particular, plaintiff will not, as defendant requests, attempt to place the stroller "in the location where it was located when [Max was] removed * * * from the stroller on October 25, 2003" or otherwise re-create the scene in the area where Max struck his head on the floor of the Wadensten house.

Following rejection by counsel for the hospital of these limitations on the scope and conduct of the proposed inspection, plaintiff filed a motion for a protective order seeking to limit the scope and conduct of the inspection in accordance with the foregoing.

## ARGUMENT

Fed. R. Civ. P. 26(b) permits discovery only as to matters that are relevant. Upon a showing of "good cause," Rule 26(c) permits the entry of protective orders limiting the frequency or extent of discovery "if justice so requires to protect a party or witness from annoyance, embarrassment, oppression, or undue burden or expense." Applying these standards, a court may grant a protective order prohibiting discovery when the information sought is immaterial to the issues in the case. *Cf., e.g., Jones v. Hirschfeld,* 219 F.R.D. 71, 76-77 (S.D.N.Y. 2003)(concluding that non-party deponent did not possess non-privileged information regarding any relevant matter, court granted motion for protective order and quashed subpoena seeking deposition testimony of non-party witness).

Without reason, the hospital rejected plaintiff's good faith effort to limit the scope of the hospital's unnecessary and unwarranted request to inspect areas of the Wadensten house, animals, and items. Permitting defendant to have the run of the Wadensten house, as, in essence, it requests, would effectively sanction an unwarranted invasion of privacy that can only reasonably be viewed as calculated to annoy, embarrass, oppress, and harass the Wadenstens. Such unjust "discovery" is plainly not tolerated by the Federal Rules of Civil Procudure. *See,* Fed. R. Civ. P. 26(b) (limiting discovery to matters that are "relevant to the claim[s] or defense[s] of any party") and 26(c) (providing for issuance of protective orders

"which justice requires to protect a party * * * from annoyance, embarrassment, oppression").

Similarly outside the scope of permissible discovery is the hospital's request that plaintiff effectively facilitate and assist defendant's inspection by placing objects (the stroller and dog crates) in the same location that they were in on the day that Max struck his head and was taken to South County Hospital. This is patently unreasonable as: first, it is undisputed that plaintiff was not present at the time; second, defendants took the deposition of Jennifer Weiss, who was present, and thus have available her description of the placement of these objects; and, third, any such placement would be speculative as no placement over a year after the fact could accurately depict the location of the objects on the day that Max struck his head and was taken to South County Hospital.

The hospital's request to "inspect" the Wadensten's dogs is similarly immaterial and speculative and thus outside the scope of permissible discovery. The manner in which Max sustained the injury that motivated his presentation at the hospital (the dogs' only involvement in the matter) is simply not material to a claim or defense in this action. Moreover, as the behavior of the Wadensten dogs in the course of any "inspection" over one year after the day that Max was taken to the hospital after striking his head at home—particularly in the presence of strangers—will not be as it was in October 2003, even if relevant (which it is not) any "inspection" encompassing observations of the dogs' behavior would provide nothing but speculative information concerning their behavior in October 2003, when Max was injured and went the hospital.

Given the utter lack of materiality in and purely speculative nature of those parts of the request discussed above, the Court ought to limit the scope of defendant's request, prohibiting it from inspecting immaterial areas, animals, and items.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court grant plaintiff's request for a protective order prohibiting the hospital from inspecting immaterial areas, animals, and items in the Wadensten home. In particular, plaintiff requests that the Court limit the scope of inspection of the Wadensten home and items contained therein as follows:

(1) The area of the house where Max hit his head on the floor (which encompasses the area in which he was later bathed and the area where the dogs' crates were located);
(2) Max Wadensten's stroller;
(3) The flashlight used by Linda Wadensten as identified in her answer to interrogatory # 4;
(4) The dog crates that plaintiff now has in her possession (one of which is the same one that was present in the Wadensten home on the day that Max was taken to South County Hospital); and
(5) As their behavior in the course of any "inspection" over one year after the day that Max was taken to the hospital after striking his head at home—particularly in the presence of strangers—will not be as it was in October 2003, Plaintiff will not present her dogs for "inspection."

Additionally, plaintiff requests that the Court's protective order express the following, reasonable conditions on the conduct of the inspection:

(1) Inspection to be conducted on a Monday morning (so as not to disrupt Max's therapy schedule);
(2) Defendant must identify all persons that defendant proposes will be present at the inspection;
(2) Inspection to be limited in time to no more than 2 hours; and,
(3) Other than placing the dog crates in the approximate location where they were on the day that Max was taken to the hospital, plaintiff will not assist defendant in the inspection in any way; in particular, plaintiff will not, as

defendant requests, attempt to place the stroller "in the location where it was located when [Max was] removed * * * from the stroller on October 25, 2003" or otherwise re-create the scene in the area where Max struck his head on the floor of the Wadensten house.

Plaintiff,
By her Attorneys,

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

## CERTIFICATION

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 23 day of June, 2005 by hand delivery

Jay Elias, Esq.
Ratcliffe, Burke, Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

Mark T. Nugent, Esq.
Paul V. Sullivan, Esq.
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903