Page 226

MS. WEIZENBAUM: Correct, it's not in the scope of the deposition, it's other than the scope of the deposition, that's our position.
MR. GALAMAGA: And we disagree with that position, but we'll resolve that issue later.
Q. You said the dog hit you in the calf, is that what you said?
A. Correct.
Q. Do you know what part of the body of the dog hit you?
A. I have no idea.
Q. And that made you lose your balance?
MS. WEIZENBAUM: Objection, asked and answered, you can tell him.
A. Correct.
Q. Did you land on the floor?
A. I landed in the cupboard, as I stated earlier.
Q. You hit the cupboard, right?
A. Correct.
Q. But you didn't go to the floor?
A. Yes, I hit the cupboard and went to the floor.
Q. What part of your body landed on the floor?
A. My hands.
Q. And that's because you had your hands free because you had let go of Maximus?
A. Correct.

Page 227

Q. If I understand your earlier testimony correctly, when the dog struck you, you had your hands under -- basically under the armpits on both sides of Maximus?
A. Correct.
Q. Do you know why you didn't grab on tighter as opposed to let go?
MS. WEIZENBAUM: Objection.
A. Natural instinct, I lost my balance. I was falling forward.
Q. So I understand your testimony, it's your testimony that natural instinct would be to let the baby go as opposed to hold onto the baby tighter?
MS. WEIZENBAUM: Objection, you can answer.
A. Correct.
Q. Do you believe that you were careless in dropping the baby?
MS. WEIZENBAUM: Objection.
Q. Understanding it was an accident, but do you believe you were careless in dropping the baby?
MS. WEIZENBAUM: You are not going to answer that.
MR. GALAMAGA: She's not going to answer if she was careless in dropping the baby. Can you tell me basis for that instruction?

Page 228

MS. WEIZENBAUM: It's harassing.
MR. GALAMAGA: It's harassing?
MS. WEIZENBAUM: It's completely immaterial and it's harassing.
MR. GALAMAGA: It's immaterial?
MS. WEIZENBAUM: I mean, are you joining her?
MR. GALAMAGA: I am not being deposed here today.
MS. WEIZENBAUM: Well, I am asking for the basis for your position that it's not immaterial. If you are going -- if your plan is to join her, then I would suggest you do that, and then proceed with questions of liability after that.
MR. DeLUCA: Sue her and you can ask her those questions.
MR. GALAMAGA: The way I understand it, you really have to have a privilege to instruct the witness not to answer.
MS. WEIZENBAUM: You're right, under the rule, what we should do when you ask harassing questions is to suspend the deposition. If you want, we can suspend the deposition; however, I am willing to issue the instruction not to suspend the deposition so that we all don't have to go to through trouble of

Page 229

stopping, going to court, and coming back.
MR. GALAMAGA: And that's why we have done the same thing when you guys have instructed numerous times today not to answer.
MR. DeLUCA: She is not a defendant in this case. You haven't filed any action against her.
MR. GALAMAGA: That's right, how she feels about dropping a baby in the case that is all about what happened to a baby that was dropped, if you think I am not entitled to that.
MR. DeLUCA: That's what you think this case is about. That's not what we think this case is about.
MR. GALAMAGA: It has nothing to do with the case?
MR. DeLUCA: What's the question, could we have the question read back, please?
MR. GALAMAGA: Could you please read the question?
(PENDING QUESTION READ)
MS. WEIZENBAUM: Objection.
MR. GALAMAGA: Have you now said she can answer?
MS. WEIZENBAUM: Yes.
A. Yes.