**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LINDA WADENSTEN, Individually and** | : | |
| **p.p.a. MAXIMUS WADENSTEN** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **C.A. NO. 04-326S** |
| | : | |
| **SOUTH COUNTY HOSPITAL;** | : | |
| **PAMELA BURLINGAME, RNP;** | : | |
| **ROBERT J. CASCI, JR., D.O.;** | : | |
| **TIMOTHY DRURY, M.D.** | : | |
| **DEFENDANT RHODE ISLAND** | : | |
| **EMERGENCY PHYSICIANS, INC.** | : | |
| **JOHN DOE, ALIAS; JANE DOE, ALIAS;** | : | |
| **JOHN DOE CORPORATION, ALIAS** | : | |
| **Defendants** | : | |

**DEFENDANT SOUTH COUNTY HOSPITAL'S OBJECTION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER WITH RESPECT TO DEFENDANT SOUTH COUNTY HOSPITAL'S AMENDED REQUEST FOR INSPECTION**

Now comes Defendant, South County Hospital (hereinafter sometimes referred to as "Defendant" or "Hospital"), and hereby objects to plaintiff's motion for protective order with respect to defendant South County Hospital's amended request for inspection of the Wadensten premises where the accident allegedly occurred. Defendant asserts that the request for inspection is reasonably calculated to lead to the discovery of admissible evidence. Defendant is also agreeable to reasonable conditions being placed upon the inspection. Defendant asserts that this Honorable Court should deny plaintiff's motion for protective order, as the inspection is aimed at discovering how the incident occurred that caused plaintiff's intracranial bleed. In further support of this motion, defendant relies upon the attached memorandum of law.

Respectfully submitted by:

Defendant,
South County Hospital
By its Attorneys,
RATCLIFFE BURKE HARTEN & ELIAS, LLP

Jay M. Elias, Esquire (#3050)
Paul F. Galamaga, Esquire (#5803)
1600 Financial Plaza
Providence, RI 02903
401.331.3400
fax 401.331.3440

## CERTIFICATION

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 29 day of June, 2005, to the following:

Amato A. DeLuca, Esquire
Miriam Weizenbaum, Esquire
Michael T. Eskey, Esquire
DeLuca & Weizenbaum, Ltd.
199 North Main Street
Providence, RI 02903

Mark T. Nugent, Esquire
Paul V. Sullivan, Esquire
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

Peggy Medaglia

obj.protective order.inspection.wpd

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LINDA WADENSTEN, Individually and** | : | |
| **p.p.a. MAXIMUS WADENSTEN** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **C.A. NO. 04-326S** |
| | : | |
| **SOUTH COUNTY HOSPITAL;** | : | |
| **PAMELA BURLINGAME, RNP;** | : | |
| **ROBERT J. CASCI, JR., D.O.;** | : | |
| **TIMOTHY DRURY, M.D.** | : | |
| **DEFENDANT RHODE ISLAND** | : | |
| **EMERGENCY PHYSICIANS, INC.** | : | |
| **JOHN DOE, ALIAS; JANE DOE, ALIAS;** | : | |
| **JOHN DOE CORPORATION, ALIAS** | : | |
| **Defendants** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOUTH COUNTY HOSPITAL'S OBJECTION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER WITH RESPECT TO DEFENDANT SOUTH COUNTY HOSPITAL'S AMENDED REQUEST FOR INSPECTION**

Now comes Defendant, South County Hospital (hereinafter sometimes referred to as "Defendant" or "Hospital"), and hereby provides this Memorandum of Law in support of South County Hospital's objection to plaintiff's motion for protective order with respect to defendant South County Hospital's amended request for inspection. Defendant asserts that the request for inspection is reasonably calculated to lead to the discovery of admissible evidence. Defendant is also agreeable to reasonable conditions being placed upon the inspection. Defendant asserts that this Honorable Court should deny plaintiff's motion for protective order, as the inspection is aimed at discovering how the incident occurred that caused plaintiff's intracranial bleed.

**FACTS AND TRAVEL**

On October 25, 2003, plaintiff Linda Wadensten left her infant, Maximus Wadensten, with her nanny, Jennifer Weiss. Ms. Weiss was watching Maximus five days a week while Linda Wadensten worked at the restaurant she owned. According to the testimony of Ms. Weiss, she took Maximus out for a walk in a jogging stroller. When she returned to the house, she brought Maximus into the house in the jogging stroller, using the stairs of the side entrance. At that time, Ms. Weiss claims that the Wadensten's two dogs, a "mutt Lab" and a "mutt retriever", were very "riled up" because Maximus was crying. Ms. Weiss testified that the dogs are usually in crates when they are in the house, and the crates were located nearby to where the incident occurred. Ms. Weiss testified that she placed the stroller against the refrigerator in part to make sure that the dogs could not get behind the stroller. She did not place the dogs in their crates.

Ms. Weiss claims that as she was attempting to take Maximus out of the stroller, Maximus continued to cry. Ms. Weiss claims that as she attempted to turn, one of the dogs hit her leg, knocking her forward. Ms. Weiss testified that she herself weighed 203 pounds at the time of the incident. Ms. Weiss testified that as she was falling forward, she let go of Maximus and dropped him onto the tile kitchen floor. The height from which Maximus was allegedly dropped remains unclear.

The child was seen at the South County Hospital Emergency Department by Nurse Practitioner Burlingame. The boy was discharged with detailed written discharge instructions directing that the infant be brought back to the hospital promptly if the child exhibited unusual drowsiness, or if they were unable to awaken him as usual.

The child was brought back to the residence by both the nanny and the mother. The child

was allowed to sleep on a sofa in the house, and the mother eventually returned to work, leaving the child with Ms. Weiss. Ms. Weiss had difficulty waking the infant from his nap, and tried to wake him by giving him a bath. Ms. Weiss called Linda Wadensten at work, and Ms. Weiss waited for flashlight and determined that something was wrong, and the decision was then made to return to South County Hospital.

Later that evening, it was determined that Maximus had suffered an intracranial bleed, requiring emergency surgery at Hasbro Children's Hospital. Plaintiff's are alleging that Maximus has suffered permanent cognitive and developmental delays as a result of this injury.

Defendant has filed a request for inspection seeking to inspect the entire Wadensten premises, the stroller the infant was in, the flashlight used by Linda Wadensten to inspect the child's eyes, the two dogs that were present at the incident, and the two dog crates.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 26(b)(1), "Parties may obtain discovery regarding any matter not privileged, that is relevant to the claim or defense of any party... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Defendant's request for inspection is clearly within the scope of discovery as defined by 26(b)(1). Defendant should be entitled to conduct discovery regarding how the accident occurred that caused the intracranial bleed. The inspection is aimed at discovering information relevant to determining exactly how this incident actually occurred and what the mechanism of injury was. This inspection is also relevant as it is aimed at determining how truthful

and accurate Ms. Weiss was when she reported what happened to the health care providers at the South County Hospital Emergency Department. The history obtained regarding how Maximus received the bump on his head was important information that impacted the plan of treatment implemented by Nurse Practitioner Burlingame at the time of the first visit. Ms. Weiss was the only witness to the incident capable of testifying regarding what transpired. Defendant is entitled to investigate the accuracy of her story. It is somewhat incredible to believe that a 203 pound women can drop a baby simply because a dog bumps her leg.

Defendant asserts that each of the specific requests in the amended request for inspection are reasonable calculated to lead to the discovery of admissible evidence, and will briefly be addressed in order.

**1. Inspection of the Premises**

Defendant is requesting the opportunity to videotape and potentially photograph the premises, including the yard where the walk allegedly occurred, the stairs where the stroller was allegedly brought into the house with the infant still in the stroller, and the entire interior of the house. Defendant does not wish to inspect inside drawers or closets or under beds; rather, defendant is requesting the opportunity to view the interior of the premises to identify the different areas where the child may have been injured. Defendant is not obligated to adopt Ms. Weiss's story, particularly given its rather odd nature. Defendant wishes to videotape and possibly photograph all of the hard surfaces in the house, including floors, sinks, bathtubs, etc., to inspect potential locations for the injury. This will also provide defendant with the opportunity to view the area where the child allegedly napped between visits to the hospital, and view the tub where Ms. Weiss allegedly tried

to awaken the child after his nap.

Plaintiff wishes to limit the area of the inspection to only the area where Ms. Weiss claims the incident occurred. The defendant is not obligated to adopt Ms. Weiss' version of events. This defendant is entitled to conduct its own discovery that it deems relevant to its defenses. Investigation into how the accident occurred that caused the child's injury is certainly relevant to the hospital's defenses. Plaintiff claims that the requested inspection is an "unwarranted invasion of privacy that can only reasonably be viewed as calculated to annoy, embarrass, oppress and harass the Wadenstens." Such motives are not in the calculation at all. This inspection is relevant and should be allowed under the liberal discovery rules as set forth in Fed.R.Civ.P. 26 (b)(1). The inspection is relevant to this defendant's defenses, and may ultimately be relevant to claims against Ms. Weiss.

**2. Maximus Wadensten's stroller**

Plaintiff has indicated she is willing to produce the stroller for inspection. Plaintiff objects to placing the stroller in a specific location for the defendant. Defendant is agreeable to this limitation, provided the defendant is allowed to attempt to place the stroller where the defendant believes the stroller was at the time of the alleged incident, based upon the testimony of Ms. Weiss.

**3. Flashlight used by Linda Wadensten to inspect child's eyes.**

The parties are in agreement to allow this aspect of the inspection.

**4. The dogs present in the room at the time of the incident.**

Ms. Weiss claims she was bumped by one of the dogs, causing her to fall forward and let go of the infant. Ms. Weiss is not certain which dog bumped her. Defendant should be allowed to view these dogs and videotape and photograph them to assess them. Plaintiff objects to producing the dogs because the dogs' behavior may not be the same as it was on the date of the incident. Defendant is not intending to use this inspection to establish the behavior of the dogs on the date of the incident. Even if that were the case, that would be an issue for admissibility at trial; not a question for discovery. Ms. Weiss, a 203 pound woman at the time of the incident, claims one of these dogs caused her to drop the infant because the dog bumped into her leg. The defendant should be entitled to view these dogs to assess the likelihood that these dogs could have caused a person of Ms. Weiss's size to drop an infant. This request for inspection is well within the parameters of Rule 26(b)(1).

**5. Dog crates.**

The parties appear to be in agreement that the dog crates can be inspected.

**6. Plaintiff's request for "reasonable conditions".**

The parties appear to be in agreement on most of the requested conditions as follows.

*(a) Inspection to be conducted on a Monday morning.*

- Defendant agrees to this request.

*(b) Defendant must identify individuals to be present at inspection.*

- Defendant agrees to this request.

(c) *Inspection limited to 2 hours.*

- Defendant agrees to this request. Defendant anticipates taking less than two hours to conduct the inspection.

(d) *Plaintiff not assist defendants with inspection.*

- Defendant agrees to this request, provided defendants can place stroller where they believe it was located. Additionally, plaintiff has indicated that one of the two crates is the same one that was at the house at the time of the incident. Defendant requests that plaintiff identify which of the two crates was present on the date of the incident.

**CONCLUSION**

For the foregoing reasons, defendant requests that this Honorable Court deny plaintiff's motion for protective order and allow defendant to conduct the inspection in accordance with the parameters defendant has set forth in this memorandum.

Respectfully submitted by:

Defendant,
South County Hospital
By its Attorneys,
RATCLIFFE BURKE HARTEN & ELIAS, LLP

Jay M. Elias, Esquire (#3050)
~~Paul F. Galamaga~~, Esquire (#5803)
1600 Financial Plaza
Providence, RI 02903
401.331.3400

**CERTIFICATION**

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 29 day of June, 2005, to the following:

Amato A. DeLuca, Esquire
Miriam Weizenbaum, Esquire
Michael T. Eskey, Esquire
DeLuca & Weizenbaum, Ltd.
199 North Main Street
Providence, RI 02903

Mark T. Nugent, Esquire
Paul V. Sullivan, Esquire
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

Peggy Medeghi

memo.protective order.inspection.wpd