UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA WADENSTEN | : | |
| | : | |
| v. | : | C.A. No. 04-326S |
| | : | |
| SOUTH COUNTY HOSPITAL, et al. | : | |

**MEMORANDUM AND ORDER**

Before this Court are Plaintiff's Motion to Strike Objections and Compel Further Production of Documents from Defendant South County Hospital (the "Hospital") (Document No. 114) and Plaintiff's Motion to Strike Objections and Compel More Responsive Answers to Interrogatories from the Hospital. (Document No. 115). The Hospital has objected to both Motions. Both of these Motions have been referred to me for determination. 28 U.S.C. § 636(b)(1)(A); Local R. 32(b). A hearing was held on June 14, 2005. As specifically set forth below, Plaintiff's Motions are GRANTED in part and DENIED in part.

**Background**

This is a medical malpractice action involving tragic injuries suffered by an infant. Defendants in this case are South County Hospital (the "Hospital"), R.I. Emergency Physicians, Inc. ("RIEP"), Nurse Practitioner Pamela Burlingame, and Doctors Robert Casci and Timothy Drury. Plaintiff's Complaint consists of a total of twenty-two (22) counts – sixteen (16) counts against the named Defendants and six (6) counts against Doe Defendants. Twenty out of the twenty-two counts arise under Rhode Island common law alleging tort claims such as negligence and lack of informed consent. These claims are before this Court pursuant to supplemental jurisdiction under 28 U.S.C.

§ 1367. The remaining two counts arise under federal law, the Emergency Medical Treatment and Active Labor Act ("EMTALA"), and are brought only against the Hospital pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1331. There are no federal claims brought against the individual Defendants or RIEP. Thus, it is fair to say that this case is dominated by the Rhode Island common law tort claims and that the federal EMTALA counts are, at least in number, secondary.

On May 16, 2005, this Court directed counsel for the parties to meet and to make a good faith attempt to resolve or narrow the issues presented by Plaintiff's Motions. Counsel did so and progress was made. This Court appreciates the efforts and professionalism of counsel in that regard. With respect to the remaining items in dispute, several are dependent on resolution of a dispute between the parties regarding the applicability of Rhode Island's "peer review"privilege to this case. See R.I. Gen. Laws § 23-17-25. Thus, this Court will address and rule on that issue below. As to the remaining items in dispute, they will be resolved on an item-by-item basis below.

**Discussion**

**A. Peer Review Privilege**

Many states have enacted peer review statutes protecting various types of medical review committee proceedings from disclosure. See generally, William D. Bremer, Annotation, Scope and Extent of Protection from Disclosure of Medical Peer Review Proceedings Relating to Claim in Malpractice Action, 69 A.L.R. 5th 559 (1999). The legislative purpose of these statutes is to foster candid evaluations and discussion among medical professionals in order to ultimately improve the quality of health care. Id. Rhode Island enacted such a peer review statute more than twenty years ago. See R.I. Gen. Laws § 23-17-25. In enacting a Rhode Island peer review privilege, "the

Legislature recognized the need for open discussions and candid self-analysis in peer-review meetings to ensure that medical care of high quality will be available to the public." Moretti v. Lowe, 592 A.2d 855, 857 (R.I. 1991).

As noted above, the Complaint in this case is dominated by Rhode Island common law tort claims. Thus, the practical issue before this Court is whether or not the privilege should give way in this case because it also involves two federal EMTALA claims against the Hospital. In addition to the EMTALA claims, the Hospital faces four other Rhode Island common law claims. At the hearing, Plaintiff's counsel conceded that, but for the EMTALA claims, there would be no argument that Rhode Island's peer review privilege was inapplicable. Plaintiff contends that neither federal statutory nor common law recognizes a peer review privilege and the Court should not do so in this case. The Hospital (joined at the hearing by its co-Defendants) argues that this Court should, pursuant to Fed. R. Evid. 501, hold that this case is subject to Rhode Island's peer review privilege.

Issues of evidentiary privilege in federal court are governed by Rule 501, Fed. R. Evid. While "Rule 501 appears to require the application of the federal common law of privileges with respect to the federal claims and the state law of privileges with respect to the state claims," it has been held that the assertion of privileges in cases such as this involving federal question and pendent state law claims is "governed by federal common law." Smith v. Alice Peck Day Mem. Hosp., 148 F.R.D. 51, 53 (D.N.H. 1993). In such cases, courts have reasoned that "[i]f a communication were privileged under state law but not under federal law, or if a communication were privileged under federal law but not under state law, it would be meaningless to hold the communication privileged for one set of claims but not for the other. Once confidentiality is broken, the basic purpose of the privilege is defeated." Perrignon v. Bergen Brunswig Corp., 77 F.R.D. 455, 458 (N.D. Cal. 1978).

In applying Fed. R. Evid. 501, the First Circuit has adopted a two-part test to determine whether to "recognize a state evidentiary privilege as a matter of federal common law." Smith, 148 F.R.D. at 53 (citing In re Hampers, 651 F.2d 19, 22-23 (1st Cir. 1981)). Part one of the test requires a determination as to whether Rhode Island's courts would recognize such a privilege. In re Hampers, 651 F.2d at 22. Part two requires a determination as to whether the asserted privilege is "intrinsically meritorious" in the federal court's own judgment. Id.

Part one of the Hampers test is not disputed in this case. Rhode Island has by statute recognized a peer review privilege. R.I. Gen. Laws § 23-17-25; Moretti, 592 A.2d at 857. Part two, however, presents a more complicated question requiring analysis of four independent factors which will be discussed in turn below.

In determining whether the privilege is "intrinsically meritorious," this Court must consider the four Hampers factors. First, the Court must consider "whether the communications originate in a confidence that they will not be disclosed." In re Hampers, 651 F.2d at 23. Rhode Island's statutory peer review privilege has been in existence for over twenty years and is well known in the medical community. In addition, the scope of the privilege has been the subject of review and comment by Rhode Island's Supreme Court on at least two occasions. See Moretti, 592 A.2d 855; and Cofone v. Westerly Hosp., 504 A.2d 998 (R.I. 1986). Further, the term "peer review boards" as used in the privilege statute has been broadly defined by Rhode Island's legislature. See R.I. Gen. Laws § 5-37-1(11)(i), (ii). Thus, it is reasonable to conclude that any communications conducted in the setting of a "peer review board" were made with an expectation of confidentiality.

Second, the Court must consider whether this "element" of confidentiality is "essential to the full and satisfactory maintenance of the relations between the parties." In re Hampers, 651 F.2d at

23. (internal citation omitted). The public policy behind Rhode Island's peer review privilege is to encourage "open discussions and candid self-analysis" in the medical community. Moretti, 592 A.2d at 857. An expectation of confidentiality is an essential "element" of this process.

Third, the Court must consider whether the relationship "is a vital one that ought to be sedulously fostered." In re Hampers, 651 F.2d at 23. (internal citation omitted). Again, the legislative purpose of Rhode Island's peer review privilege is to encourage "open" and "candid" communications in order to foster "medical care of high quality." Moretti, 592 A.2d at 857. A relationship fostering open and candid dialogue between medical professionals is, of course, vital to this purpose.

Finally, the Court must consider whether "the injury that would inure to the relation by the disclosure of the communications [would be] greater than the benefit thereby gained for the correct disposal of litigation." In re Hampers, 651 F.2d at 23. (internal citation omitted). "When applying this fourth element, courts have basically balanced the interest served by the state privilege against the federal interest in favor of disclosure." Marshall v. Spectrum Medical Group, 198 F.R.D. 1, 4 (D. Me. 2000) (recognizing existence of an even split among federal courts on whether a medical peer review privilege exists under federal common law).

In the context of medical malpractice claims, Rhode Island's legislature has balanced these competing interests in favor of confidentiality. In a case such as this which is dominated in number by Rhode Island common law claims, this Court concludes that the prudent course of action, as a matter of comity, is to reach the same balance and find that the interest in quality health care outweighs the interest in disclosure. See, e.g., Burrows v. Redbud Community Hosp. Dist., 187 F.R.D. 606, 608-09 (N.D. Cal. 1998) (federal court may apply state privilege law to federal question

case "in the interest of comity"). Plaintiff cites Univ. of Penn. v. E.E.O.C., 493 U.S. 182 (1990), in support of her argument for disclosure. While the Supreme Court refused to recognize a common law peer review privilege under Fed. R. Evid. 501, it did so in the context of an employment discrimination case challenging denial of tenure to a business school professor. This Court, however, does not find that case to be controlling in this situation. The interest in promoting quality health care is much stronger than the interests of faculty selection and academic freedom balanced in favor of disclosure by the Supreme Court in the Univ. of Penn. case.

As noted above, this case is dominated, at least in number, by Rhode Island common law malpractice claims. The two federal EMTALA claims arise out of the same set of facts but are brought only against the Hospital and cannot be brought against any of the other Defendants. At the hearing, this Court expressed concern about creating an "exception" to the general peer review privilege for cases involving related federal claims such as under EMTALA. If litigants could pierce the privilege in discovery simply by filing in this Court and pleading (subject to Fed. R. Civ. P. 11) an EMTALA or other federal claim, this Court is concerned that such a result would "gut" the privilege. Furthermore, such a result may well have the consequence of chilling all peer review proceedings if the medical community had uncertainty as to the enforceability of the privilege. This chilling effect would directly contradict Rhode Island's legislative purpose in enacting the peer review privilege in the first place.

Although EMTALA does not create a cause of action for medical malpractice, Hart v. Mazur, 903 F. Supp. 277, 280 (D.R.I. 1995), Plaintiff's EMTALA allegations in this case (Counts VII and VIII) relate directly to the quality of patient care provided. It would be an incongruous result for the peer review privilege to be pierced in a case such as this but stand if there were no federal claims

alleged. This is not a case in which application of the privilege would deprive Plaintiff of the only evidence that might support her claims in this case. In fact, at the hearing, Plaintiff's counsel exhaustively outlined the factual bases for her client's claims in detail and cited frequently to evidence obtained during discovery which she believed was supportive of Plaintiff's claims. Finally, if this Court found that the peer review privilege did not apply to the EMTALA claims as Plaintiff argues, that ruling would have a ripple effect on the other Defendants in this case who are not sued under EMTALA but only under Rhode Island common law.

For the reasons discussed above, this Court holds that Rhode Island's peer review privilege, R.I. Gen. Laws § 23-17-25, applies to all of Plaintiff's claims in this matter, including as a matter of comity, her EMTALA claims against the Hospital. Thus, the Hospital's peer review privilege objections are sustained without prejudice to Plaintiff's ability, in good faith and if necessary, to challenge the scope of the privilege as applied by the Hospital and disclosed in an appropriate privilege log under Fed. R. Civ. P. 26(b)(5).

**B. EMTALA Discovery**

Plaintiff argues that she is entitled to discovery of information from the Hospital concerning care available to, and rendered to, other emergency room patients presenting with head trauma. Plaintiff asserts that such discovery is relevant to her EMTALA claim that the Hospital failed to provide the minor patient with an "appropriate medical screening examination" within the "capability" of its Emergency Department. Second Am. Compl., Count VII, ¶ 4. The Hospital argues that Plaintiff "does not have a legitimate EMTALA claim in this case" and that she is not entitled to information regarding other patients treated at the Hospital. The Hospital further argues

that Plaintiff's discovery requests in this regard are overly broad, would result in undue burden to it and infringe on state and federal patient confidentiality protections.

While the Hospital may well believe that Plaintiff does not have a "legitimate" EMTALA claim, the substantive merits of that claim are not currently before this Court, and the fact of the matter is that Plaintiff's Complaint contains two EMTALA claims. The Hospital did not challenge the EMTALA claims under Fed. R. Civ. P. 12(b)(6) and, for purposes of discovery, this Court can only assume at this point that Plaintiff has properly stated claims under EMTALA which were initiated in compliance with Fed. R. Civ. P. 11(b). Thus, pursuant to Fed. R. Civ. P. 26(b), Plaintiff is entitled to obtain discovery regarding any matter, not privileged, that is relevant to her EMTALA claims. Relevant information need not be admissible at trial as long as it appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

It is undisputed that EMTALA was enacted to prohibit the "dumping" of indigent and uninsured patients from private to public hospitals. See Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 792 (2nd Cir. 1999). There is no suggestion that the minor patient in this case was indigent or uninsured. However, recovery under EMTALA is not restricted to indigent or uninsured patients. The scope of EMTALA extends to "all patients" who present themselves at a covered hospital, not just the indigent and uninsured. Correa v. Hosp. San Francisco, 69 F.3d 1184, 1194 (D.P.R. 1995) (emphasis added), EMTALA's screening requirement has "both a substantive and a procedural component." del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, 20 (1st Cir. 2002). The substantive component requires that the hospital provide a screening exam "reasonably calculated to identify critical medical conditions." Correa, 69 F.3d at 1192. In other words, whether the procedures followed, even if they resulted in a misdiagnosis, were reasonably calculated to

identify the patient's critical medical condition. The procedural requires that the hospital provide this level of screening "uniformly to all those who present substantially similar complaints." Id. In essence, the substantive component considers whether there was disparate treatment. See Phillips v. Hillcrest Med. Center, 244 F.3d 790, 797 (10th Cir. 2001) ("a hospital's obligation under EMTALA is measured by whether it treats every patient perceived to have the same medical condition in the same manner").

In del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, the First Circuit Court of Appeals affirmed summary judgment for a hospital under EMTALA. The Court of Appeals reasoned that plaintiffs' EMTALA claim failed as a matter of law because they "failed to submit any evidence establishing that [the hospital] treated [the decedent] any differently than it treated other patients with substantially similar symptoms." Id. at 22. It held that plaintiffs failed to raise a genuine issue of material fact on the issue of differential treatment under EMTALA because they "made no effort to compare [the decedent's] screening with screenings of other [hospital] patients suffering from substantially similar symptoms." Id. In other words, whether the patient received the "baseline of care." Id.

In view of this First Circuit guidance on the elements of an EMTALA claim, this Court does not agree with the Hospital's assertion that Plaintiff is not entitled to information regarding other patients treated at the Hospital and overrules the Hospital's general objection in that regard. Such discovery is plainly relevant to the EMTALA analysis applied by the First Circuit in the del Carmen Guadalupe case. As to the Hospital's legitimate patient confidentiality concerns, Plaintiff agrees to the redaction of personal identifying information. See Plaintiff's Mem. at p. 12 n.7. The Hospital also contends that the discovery requests implicated by this issue are overbroad. To the extent that

the requests are not already so limited, this Court limits response and disclosure to the time period beginning January 1, 2001 and only as to patients presenting to the Hospital's Emergency Department with "substantially similar" symptoms/complaints to those exhibited by the minor patient in this case.

**C. Miscellaneous**

1. Interrogatory No. 11. Pursuant to Fed. R. Civ. P. 33(d), the Hospital has exercised its option to produce responsive medical records. To the extent Plaintiff seeks information beyond the medical records, the Hospital appropriately refers Plaintiff to the responses of the co-Defendants (particularly Nurse Practitioner Burlingame) who have already been the subject of extensive discovery. Although the Hospital's objections are stricken, Plaintiff has not established that the answer given is not responsive.

2. Interrogatory No. 13. The Hospital's objections are stricken except to the extent it is asserting the peer review privilege. The Hospital shall supplement its answer to provide the non-privileged factual bases for its assertion that there were no deviations from policies, procedures or practices regarding the evaluation of the minor patient on October 25, 2003.

3. Interrogatory Nos. 15-17. As set forth in Section B (EMTALA Discovery) above, the Hospital's general relevance objections are stricken. As to Interrogatory No. 15, Plaintiff shall serve a revised interrogatory on the Hospital which identifies the potentially available methods of diagnosis and then asks the Hospital to respond to the questions set forth in subparts a-c as to those methods. As to Interrogatory No. 16, Plaintiff shall serve a revised interrogatory which is consistent with revised Interrogatory No. 15 and is limited in time back only to January 1, 2001 and in scope only to cases involving "substantially similar" symptoms/complaints. Finally, the Hospital may, as

to Interrogatory Nos. 16 and 17, elect to produce appropriately redacted records pursuant to Fed. R. Civ. P. 33(d) in response.

4. Interrogatory No. 18. The Hospital's objections are sustained. The interrogatory calls for improper speculation on the part of the Hospital.

5. Request for Production No. 6. The Hospital shall produce policies 330 (minimal guidelines for interhospital transfer) and 125 (emergency department relationship with community). Plaintiff has not established the relevance of policy 160 (outpatient treatment) and it need not be produced.

**Conclusion**

For the reasons and as discussed above, Plaintiff's Motions to Strike and Compel (Document Nos. 114 and 115) are GRANTED in part and DENIED in part.

LINCOLN D. ALMOND
United States Magistrate Judge
June 30, 2005