**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LINDA WADENSTEN, Individually and** | : | |
| **p.p.a. MAXIMUS WADENSTEN** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 04-326S** |
| | : | |
| **SOUTH COUNTY HOSPITAL;** | : | |
| **PAMELA BURLINGAME, RNP;** | : | |
| **ROBERT J. CASCI, JR., D.O.;** | : | |
| **TIMOTHY DRURY, M.D.** | : | |
| **RHODE ISLAND EMERGENCY** | : | |
| **PHYSICIANS, INC.;** | : | |
| **JOHN DOE, ALIAS; JANE DOE, ALIAS;** | : | |
| **JOHN DOE CORPORATION, ALIAS** | : | |
| **Defendants.** | : | |

**PLAINTIFF'S OBJECTION TO**
**DEFENDANT SOUTH COUNTY HOSPITAL'S MOTION FOR PHYSICAL AND MENTAL EXAMINATIONS OF MAXIMUS WADENSTEN**

Now comes plaintiff in the above-captioned action and hereby objects to Defendant South County Hospital's motion for leave to conduct physical and mental examinations of the minor (now two-year old) plaintiff, Maximus Wadensten. A memorandum in support of the objection is filed herewith.

Plaintiff submits that the Court ought to deny the hospital's motion because: (1) it is untimely and granting it would result in extreme prejudice to the plaintiff; and (2) the hospital failed as a matter of law to show good cause for the examinations as required by Fed. R. Civ. P. 35(a). Alternatively, should the Court consider granting the motion, plaintiff requests: (1) that the hospital be compelled to specify the time, place, intended duration, and precise examinations and/or tests desired to be performed; and (2) once the hospital discloses this information (which, to date, it has not revealed), that plaintiff be given the opportunity to seek a protective order, if necessary.

Plaintiff,
By her Attorneys,

[signature]

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

## CERTIFICATION

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 15 day of July, 2005 by ________________:

Jay Elias, Esq. via email + 1st class mail
Ratcliffe, Burke, Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

Mark T. Nugent, Esq. via 1st class mail
Paul V. Sullivan, Esq.
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

[signature]

2005 JUL 18 A 10:20
FILED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LINDA WADENSTEN, Individually and** | : | |
| **p.p.a. MAXIMUS WADENSTEN** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 04-326S** |
| | : | |
| **SOUTH COUNTY HOSPITAL;** | : | |
| **PAMELA BURLINGAME, RNP;** | : | |
| **ROBERT J. CASCI, JR., D.O.;** | : | |
| **TIMOTHY DRURY, M.D.** | : | |
| **RHODE ISLAND EMERGENCY** | : | |
| **PHYSICIANS, INC.;** | : | |
| **JOHN DOE, ALIAS; JANE DOE, ALIAS;** | : | |
| **JOHN DOE CORPORATION, ALIAS** | : | |
| **Defendants.** | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANT SOUTH COUNTY HOSPITAL'S MOTION FOR PHYSICAL AND MENTAL EXAMINATIONS OF MAXIMUS WADENSTEN**

## INTRODUCTION

Now before the Court is Defendant South County Hospital's motion for leave to conduct physical and mental examinations of the minor (now two-year old) plaintiff, Maximus Wadensten. The Court ought to deny the hospital's motion because: (1) it is untimely and granting it would result in extreme prejudice to the plaintiff; and (2) the hospital failed as a matter of law to show good cause for the examinations as required by Fed. R. Civ. P. 35(a). Alternatively, should the Court consider granting the motion, plaintiff requests: (1) that the hospital be compelled to specify the time, place, intended duration, and precise examinations and/or tests desired to be performed; and (2) once the hospital discloses this information (which, to date, it has not revealed), that plaintiff be given the opportunity to seek a protective order, if necessary.

The hospital's request to conduct unspecified physical and mental examinations of a two-year old toddler is simply too late. Indeed, the hospital did not even attempt to notice the examinations within the time period permitted for discovery, which closed on June 30, 2005. Instead, the hospital waited until the very last day of the discovery period to serve and file a motion to conduct its unnamed examinations. Inexcusably delaying disclosure of its desire to subject young Max to physical and mental examinations until the very last day of the period allotted for discovery, the hospital cannot reasonably claim that it would be prejudiced by the denial of its request. In contrast, overlooking the hospital's inexplicable delay and granting it leave to conduct the examinations would result in extreme and unwarranted prejudice to plaintiff.

As of the filing of this memorandum in opposition to the hospital's untimely motion, plaintiff is diligently coordinating the preparation of expert disclosures and reports for filing next week. The purpose of closing discovery before expert disclosures are due is sensible and plain: in formulating opinions the experts must have available to them all information and evidence that may be proffered into the evidence at trial. It would be inherently unfair and unduly prejudicial to plaintiff's case to permit defendants to acquire information after the close of discovery that will not be available to plaintiff's experts in formulating their opinions but, in all likelihood, will be available to defendant's experts. It would be even more damaging to plaintiff's case should their experts' opinions require modification based on information acquired after the disclosure deadline and after service on defendants of plaintiff's expert disclosure and reports.

Subjecting plaintiff to such undue prejudice as a result of defendant's untimely motion is all the more unwarranted since, in addition to the foregoing, the hospital has not

shown good cause for the examinations as required by Fed. R. Civ. P. 35(a). Notwithstanding its obligation to show affirmatively that good cause exists "for each particular examination" sought, the hospital does not even specify in its motion the scope of the examinations it seeks nor the specific tests or procedures proposed.

Similarly omitted from the hospital's motion is any indication of its ability to obtain the desired information by other means. Max receives treatment, therapy, and services on a full-time, daily basis through a number of physicians, therapists, and other treatment and service providers. Where, as here, all of Max's medical records have been produced to defendants and defendants have noticed and conducted depositions of his primary treating physicians and care providers, there is a real question whether physical and mental examinations of Max would yield any additional information material to the claims and defenses in this action. By failing to provide any specifics regarding the examinations sought, the hospital has likewise failed to show, as it must, that the desired examinations will not result in a duplication of prior examinations, or in cumulative or invasive procedures.

Add to the hospital's lack of demonstrated necessity for the desired examinations the fact that Max is two-years old and it becomes clear that the hospital has utterly failed to show good cause for the examinations as required by Fed. R. Civ. P. 35(a). For these reasons, the Court ought to deny the hospital's motion for leave to conduct the desired examinations.

## FACTS AND TRAVEL

On October 25, 2003, Max Wadensten, then eight-months old, was brought to the Emergency Department at South County Hospital after his head hit a hard, tile, floor at home. He was triaged as "urgent" at reception and then seen by a nurse-practitioner,

defendant Burlingame for evaluation and treatment. According to defendant Burlingame's answers to interrogatories, "X-ray [of the skull] was not taken because I was able to palpate the skull directly under the site of injury and did not find evidence of depressed or linear skull fracture." The record documenting Burlingame's evaluation and discharge was co-signed by defendant Timothy Drury, M.D., the emergency department physician responsible for supervising the care provided by Burlingame. Dr. Drury did not see the child prior to discharge. At the time of this first visit, Max had an undiagnosed skull fracture and a developing intracranial bleed. His mother was instructed by defendant Burlingame that Max should be allowed to sleep for the next two hours and to watch for "unusual breathing, vomiting." When he was difficult to awaken after his two hour nap, his mother and nanny returned with him to South County Hospital. The bleed was diagnosed at that time and Max was transported by MediVac to Hasbro Children's Hospital in Providence. As a result of a massive bleed, necessary surgery and swelling, Max is left with marked cognitive and developmental delays and impaired vision and movement on his left side.

Claiming that they sustained and will suffer significant damages as a proximate result of negligence by Dr. Drury, Dr. Casci, Nurse Practitioner Burlingame, and the hospital, Max and his mother brought this action against them. In the complaint, plaintiffs further claimed that they suffered damages as a proximate result of the defendant hospital's violation of EMTALA.

As a result of his injuries, Max treats with a number of physicians and treatment providers, including a pediatrician, a pediatric neurologist, vision and hearing specialists, neurosurgeons, occupational and physical therapists, and visiting nurses. Max treats nearly every day with two to three therapists, beginning most days at 8:00 a.m., finishing some days

as late as 5:00 p.m. Additionally, Max receives services through various programs, including Early Intervention and Visiting Nurses.

Through plaintiff's disclosures and defendants' discovery, defendants have obtained medical records from Max's treatment providers and have noticed the depositions of most of Max's primary medical providers. While defendants elected to cancel several depositions they had noticed for Max's treatment providers, they conducted lengthy depositions of several others, including Max's neurosurgeon, pediatrician, and pediatric neurologist.

On June 30, 2005 (the last day of the time allotted to discovery), the hospital served and filed a motion for Physical and Mental examination of Max. The hospital's motion, memorandum, and proposed order are silent as to the time, place, intended duration, and type of testing desired to be performed. The motion reveals only the names and areas of practice of the proposed examiners (Joel Herskowitz, M.D., pediatric neurology; Michael Yogman, developmental-behavioral pediatrics), but not the scope of the examinations desired, nor any particular tests. Effectively requesting a blank check to "order and/or perform" whatever tests the examiners consider "relevant and necessary," the hospital requests an order permitting the examinations subject only to a "formal notice" to plaintiff of the time, place, intended duration, and "general outline of the type of testing to be done."

## ARGUMENT

### I. The Court ought to deny the hospital's motion because it is untimely and granting it would result in extreme prejudice to the plaintiff.

Discovery closed on June 30, 2005. If the hospital considered it necessary to conduct physical and mental examinations of Max as part of its discovery, it was obliged by the discovery-closure deadline to obtain leave to do so under Rule 35(a) and to complete (or, at the very least, to notice) the examinations before June 30, 2005—the last day on which

discovery was permitted by the Court's scheduling order in this action. *See, e.g., Shumaker v. West,* 196 F.R.D. 454, 456 (S.D.W. Va. 2000)(defendant's request for Rule 35 medical examination denied as untimely; motion should have been filed "well before" the Scheduling Order deadline).

Permitting the hospital to extend its discovery beyond the deadline by conducting physical and mental examinations of Max would result in extreme prejudice to plaintiff. In accordance with the Court's scheduling order, plaintiff is now preparing expert disclosures and coordinating the submission of expert reports. In preparing to submit its expert disclosures, plaintiff is relying on the fact that discovery is closed. The express provision in the Court's scheduling order of discovery closure before expert disclosure is deliberate, and the importance of its enforcement here merits emphasis.

In disclosing expert opinions after discovery is closed (as is provided in the scheduling order applicable here), parties do so confident in the fact that their experts have formed the opinions contained in their reports based on a closed data set of information—*i.e.,* that which is available to the parties as of the discovery-closure date. This limitation serves the important function of protecting experts from negative credibility inferences arising from cross-examination based on factual information that was not available to the experts when they formed their opinions. For instance, regardless of explanation, no expert's credibility is positively served by having to admit on cross-examination that he or she did not consider material factual information before forming his or her opinions.

Enforcing discovery closure as a means of defining the scope of the factual data on which experts may rely to form and express their opinions similarly protects experts from negative credibility inferences that would certainly follow from being compelled to modify

opinions based on later-discovered information. Thus, notwithstanding the fact that a modification may have been compelled as the result of information not available when an expert's original opinions were published—the very fact that an expert has modified or changed an opinion will certainly be used to discredit that expert's opinions on cross-examination, regardless of the explanation.

Plainly, given the design and purpose of the scheduling order's deliberate sequencing of expert disclosure following discovery closure, it would be inherently unfair and unduly prejudicial to plaintiff's case to permit defendants to acquire information after the close of discovery that will not be available to plaintiff's experts in formulating their opinions. As it is likely that, if the desired examinations are permitted, the findings and reports would be available to defendants' experts before disclosure of their opinions, it would be even more prejudicial to plaintiff should her experts' opinions require modification based on information acquired after the disclosure deadline and after service on defendants of plaintiff's expert disclosures and reports.

The hospital's motion is clearly untimely and unduly prejudicial. For these reasons and because, as shown below, the examinations desired are not likely to yield information not already available to defendants through Max's medical records and defendants' depositions of Max's treating physicians and other medical providers, the Court ought to deny the hospital's motions for physical and mental examinations.

**II. The Court ought to deny the hospital's motion because, as a matter of law, the hospital has not shown good cause for the examinations as required by Fed. R. Civ. P. 35(a).**

A party moving for a physical or mental examination under Fed. R. Civ. P. 35(a) must produce sufficient information so that the district judge may fulfill the judicial function mandated by the Rule, which, in pertinent part here, is to determine whether "good cause"

exists for the desired examinations. *See, e.g., Schlagenhauf v. Holder,* 379 U.S. 104, 118-119, 85 S. Ct. 234, 243 (1964)("movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule [35]"). Rule 35's "good cause" requirement is "not a mere formality, but is a plainly expressed limitation on the use of that Rule." *Id.,* 379 U.S. at 118, 85 S. Ct. at 242.

> [The good cause requirement under Rule 35 is] not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require[s] an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy <u>and that good cause exists for ordering each particular examination</u>.

*Id.,* 379 U.S. at 118, 85 S. Ct. at 242-43 (emphasis added).

The good cause requirement under Rule 35 "would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words 'showing good cause therefor,' the Rules indicate that there must be greater showing of need under [Rule 35] than under the other discovery rules." *Guilford Nat'l Bank of Greensboro v. Southern Ry. Co.,* 297 F.2d 921, 924 (4th Cir. 1962) (footnote omitted).

Also relevant to the determination whether good cause exists for a Rule 35 examination is "the ability of the movant to obtain the desired information by other means." *Schlagenhauf v. Holder,* 379 U.S. at 118, 85 S. Ct. at 242-43.

Applying the foregoing standards, it is evident that the hospital here the hospital's motion fails as a matter of law to meet its burden to show good cause for the desired examinations as required by Rule 35. Firstly, the hospital's motion does not specify any particular test or examination that it proposed to perform on young Max Wadensten. This alone compels a denial of the hospital's motion. *See, Schlagenhauf v. Holder,* 379 U.S. at 118,

85 S. Ct. at 242-43 (good cause provision under Rule 35 "require[s] an affirmative showing by the movant that * * * good cause exists for ordering each particular examination [emphasis added]"). Secondly, the hospital has failed to show, as it must, that it is unable to obtain the desired information by other means. This too, compels the denial of the hospital's Rule 35 motion. *See, e.g., Shumaker v. West,* 196 F.R.D. at 457 (no good cause shown for Rule 35 examination where there was "ample evidence available from which Defendant can obtain the information he currently seeks"); *Pearson v. Norfolk-Southern Railway Co.,* 178 F.R.D. 580, 582 (M.D. Ala. 1998)(Rule 35 motion denied where defendant failed to show that information on intellectual functioning of minor plaintiff sought by mental examination was not otherwise available from other sources, including subpoenaed school and medical records, and from interviews with relatives and aquaintences); *Stanislawski v. Upper River Services, Inc.,* 134 F.R.D. 260, 262 (D. Minn. 1991)(good cause for Rule 35 examination not shown where defendant had plaintiff's medical records, had deposed plaintiff, and had been provided with information concerning plaintiff's education, experiences and medical disability).

Clearly, the hospital has not shown good cause for the desired examinations. For this reason and the additional grounds that the hospital's motion is untimely and allowing it would be unduly prejudicial to plaintiff, the Court ought to deny the hospital's Rule 35 motion.

**III. Alternatively, in fairness to plaintiff and in light of the fact that Max Wadensten is two-years old, should the Court consider granting the hospital's Rule 35 motion, plaintiff ought to be afforded an opportunity to seek a protective order, if necessary, after the hospital discloses the time, place, intended duration, and precise examinations and/or tests desired to be performed.**

While plaintiff submits that the Court ought to deny the hospital's motion to conduct physical and mental examinations of Max Wadensten, alternatively, given that the hospital has not indicated in any manner whatsoever the time, place, intended duration, and precise examinations and/or tests desired to be performed, should the Court consider granting the motion, plaintiff requests: (1) that the hospital be compelled to specify the time, place, intended duration, and precise examinations and/or tests desired to be performed; and (2) once the hospital discloses this information (which, to date, it has not revealed), that plaintiff be given the opportunity to seek a protective order, if necessary.

## CONCLUSION

For the foregoing reasons, the Court ought to deny the defendant hospital's motion for leave to conduct physical and mental examinations of the minor plaintiff, Maximus Wadensten.

Plaintiff,
By her Attorneys,

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

**CERTIFICATION**

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 15 day of July, 2005 by _______________:

Jay Elias, Esq. via email + 1st class mail
Ratcliffe, Burke, Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

Mark T. Nugent, Esq. via 1st class mail
Paul V. Sullivan, Esq.
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

_______________________________

2005 JUL 18 A 10:20

FILED