SCANNED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA WADENSTEN, Individually and p.p.a. MAXIMUS WADENSTEN<br>Plaintiffs, | : | |
| v. | : | C.A. No. 04-326S |
| SOUTH COUNTY HOSPITAL;<br>PAMELA BURLINGAME, RNP;<br>ROBERT J. CASCI, JR., D.O.;<br>TIMOTHY DRURY, M.D.<br>RHODE ISLAND EMERGENCY PHYSICIANS, INC.;<br>JOHN DOE, ALIAS; JANE DOE, ALIAS;<br>JOHN DOE CORPORATION, ALIAS<br>Defendants. | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT SOUTH COUNTY HOSPITAL'S MOTION FOR LEAVE TO FILE THIRD PARTY COMPLAINT**

Now comes plaintiff in the above-captioned matter and hereby objects to the motion of defendant, South County Hospital for Leave to File a Third Party Complaint. As grounds, plaintiff incorporates by reference the accompanying memorandum of law in opposition to the hospital's motion.

Plaintiff,
By her Attorneys,

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

**CERTIFICATION**

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 19 day of July, 2005 by 1ST class mail

Jay Elias, Esq.
Ratcliffe, Burke, Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

Mark T. Nugent, Esq.
Paul V. Sullivan, Esq.
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

Jennifer [signature]

FILED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LINDA WADENSTEN, Individually and<br>p.p.a. MAXIMUS WADENSTEN<br>Plaintiffs,<br><br>v.<br><br>SOUTH COUNTY HOSPITAL;<br>PAMELA BURLINGAME, RNP;<br>ROBERT J. CASCI, JR., D.O.;<br>TIMOTHY DRURY, M.D.<br>RHODE ISLAND EMERGENCY<br>PHYSICIANS, INC.;<br>JOHN DOE, ALIAS; JANE DOE, ALIAS;<br>JOHN DOE CORPORATION, ALIAS<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 04-326S |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OBJECTION TO MOTION FOR LEAVE TO FILE THIRD PARTY COMPLAINT**

## INTRODUCTION

Now before the Court is Defendant South County Hospital's misguided attempt to add a new party to this EMTALA and medical-negligence action on the day before the close of an extensive and costly discovery period. The Court ought to reject the hospital's attempt to add a new, unnecessary party to the action at this late stage of the proceedings as futile, untimely, and unduly prejudicial.

The hospital's claim that Max's nanny, Jennifer Weiss, is a joint tortfeasor from whom it has a right of contribution is clearly wrong and contrary to established law. As a matter of law, Jennifer Weiss is *not* a joint tortfeasor and the hospital has no right of contribution from her. As such, there is no legal basis for permitting the hospital to implead Ms. Weiss in this action.

Even if there were a legal basis for permitting the hospital to add Ms. Weiss as a third-party defendant based on a claim of contribution (which there is not), the Court ought

to nonetheless deny the hospital's motion on the grounds that it is untimely, unnecessary, and would be unduly prejudicial. The hospital's delay in seeking to add a third-party claim for contribution to this action is inexcusable. The hospital's explanation—*i.e.*, that the claim only became apparent through discovery—is unpersuasive. Significantly, the pleadings and discovery record show clearly that the evidence supporting the hospital's untimely claim has been known to it from the time that it answered the complaint. As such, the hospital effectively offers no reasonable explanation for its delay in moving to add Ms. Weiss to this action until the close of discovery.

Granting the hospital's motion is not necessary to the resolution of any claim or defense in this action and denying it would not result in any prejudice to it. Plainly, if the hospital is found liable for Max's injuries, it would still have the option of bringing a separate action for contribution against Ms. Weiss. On the other hand, granting the hospital's motion would result in extreme, unwarranted, and undue prejudice to plaintiff. Adding a new party at this late stage would effectively unravel discovery and derail trial, as a new party would reasonably be expected to move to reopen and repeat discovery already completed as well as request enlargements of time and modifications to the scheduling order.

Given the absence of legal grounds for the hospital's motion and the certainty that allowing the addition of a new party to the action after the close of discovery would create undue and prejudicial delay and significant additional costs and expenses to the parties, the Court ought to deny South County Hospital's Motion for Leave to File a Third Party Complaint.

## FACTS AND TRAVEL

On October 25, 2003, Max Wadensten, then seven months old, was brought to the Emergency Department at South County Hospital after his head hit a hard, tile, floor at

home. He was triaged as "urgent" at reception and then seen by a nurse-practitioner, defendant Burlingame for evaluation and treatment. According to defendant Burlingame's answers to interrogatories, "X-ray [of the skull] was not taken because I was able to palpate the skull directly under the site of injury and did not find evidence of depressed or linear skull fracture." The record documented the circumstances of the child's fall that occurred after the sitter was bumped by the family dogs and dropped Max while taking him out of his stroller.

The record documenting Burlingame's evaluation and discharge was co-signed by defendant Timothy Drury, M.D., one of the emergency department physicians responsible for supervising the care provided by Burlingame. Dr. Drury did not see the child prior to discharge. At the time of this first visit, Max had an undiagnosed skull fracture and a developing intracranial bleed. His mother was instructed by defendant Burlingame that Max should be allowed to sleep for the next two hours and to watch for "unusual breathing, vomiting."

When Max was difficult to awaken at the end of his two hour nap, his mother and nanny returned with him to South County Hospital. The bleed was diagnosed at that time and Max was transported by MediVac to Hasbro Children's Hospital in Providence. As a result of a massive bleed, necessary surgery and swelling, Max is left with marked cognitive and developmental delays and impaired vision and movement on his left side.

The plaintiff's complaint was filed on July 28, 2004 and answered by South County Hospital on September 7, 2004. An amended complaint adding Timothy Drury, M.D. was filed on September 17, 2004 and answered by this Defendant on October 4, 2004. A pre-trial conference was held on October 27, 2004 and the closure of non-expert discovery was initially set for April 30, 2005. This deadline was extended twice and discovery closed on

June 30, 2005. The deadline for disclosure of plaintiff's experts and their reports is July 16, 2005 and for defendants' is July 30, 2005. Pre-trial memoranda are due October 31, 2005 with the case scheduled to be placed on the trial calendar in November, 2005.

Defendant South County Hospital's Motion for Leave to a File Third Party Complaint alleges negligence by the infant plaintiff's sitter and seeks contribution under the Rhode Island joint tortfeasor statute, R.I.G.L. § 10-6-1 *et seq.* Defendant's motion was received by the plaintiff on June 29, 2005.

## ARGUMENT

**I. Permitting the addition of Jennifer Weiss as a third-party defendant to this action based on a claim of contribution would be futile since, as a matter of law, she is not a joint tortfeasor and, as such, South County Hospital has no right of contribution against her.**

Fed. R. Civ. P. 14(a) permits impleader only against a non-party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." This provision of Rule 14 functions to insure legally sufficient federal jurisdiction. As the First Circuit noted in *Metropolitan Life Ins. Co. v. Ditmore,* 729 F.2d 1, 9 (1st Cir. 1984) (citing *Owen Equipment v. Kroger,* 437 U.S. at 376, 98 S.Ct. at 2404) "Third-party claims, being by definition logically dependent on the resolution of the original suit, fall within the court's ancillary jurisdiction over that suit."

Conversely, a claim between two entities that does not arise from the original action is neither proper for impleader nor can it obtain jurisdictional footing from the "main claim," that is, the original claim between the plaintiff and defendant.

> First, it is settled that a third-party plaintiff cannot attempt to stand in the shoes of the plaintiff and assert a claim against the third-party-defendant that rightfully belongs to the plaintiff itself. To be valid, a third-party complaint must assert a claim that the third party plaintiff has in its own right. *See* 3 MOORE'S FEDERAL PRACTICE P. 14.01 [1.-1], at 14-6 ("[t]he 1946 amendments eliminated the defendant's right to implead a person who is or may be liable to the *plaintiff*"). Secondly, the claim that the third-party

> plaintiff asserts in its own right must be derivative of some claim set forth in the plaintiff's complaint.

*U.S. v. Government Development Bank*, 132 F.R.D. 129, 131 (D.C.P.R. 1990)(emphasis in original). See also *Morris v. Lenihan*, 192 F.R.D. 484, 487 (E.D.Pa. 2000)("However, if a third-party complaint is not properly brought, the court has no subject matter jurisdiction, and the complaint should be dismissed" and cases cited therein.); *Lopez de Robinson v. United States*, 162 F.R.D 256, 258 (D.P.R. 1995)("a direct line of liability must be alleged to exist between the third-party plaintiff and third-party defendant independent of that between the first party plaintiff and the defendant."); C. Wright, A. Miller, M. Kane, Federal Practice and Procedure sec. 1444 at 321-22 (2d ed. 1990) (a claim by a defendant against a third-party defendant is within a federal court's ancillary jurisdiction and no independent basis for jurisdiction is necessary if the original parties are properly before the court).

Without merit (or citation to authority), Defendant South County Hospital asserts that it stands as a joint tortfeasor in relation to Jen Weiss with respect to each claim brought by the plaintiff against the hospital. Specifically, the Hospital alleges that Jennifer Weiss negligently cared for her friend's child, Max Wadensten. *See,* Defendant's Third Party Complaint [proposed] Count I, para. 8. Then, after she brought the injured infant to the hospital for help—where plaintiff's claims that Max suffered significant permanent injuries as a proximate result of the Hospital's violation of EMTALA, medical malpractice, negligent credentialing, and discharge of Max with a skull fracture—the hospital seeks to allege that Ms. Weiss was again negligent for not returning Max to South County Hospital sooner. *See* Defendant's Third Party Complaint [proposed] Count I, para. 9. Based on these allegations, the Hospital argues that, should it be found liable, it has a right of contribution from the woman who cared for the child before and after they were negligent and violated federal law.

The Hospital properly cites this Court to the Rhode Island joint tortfeasor statute, R.I.G.L. 10-6-1 *et seq.*, which the parties agree controls. However, under this Rhode Island statute as interpreted by the Rhode Island Supreme Court, South County Hospital and Jen Weiss are not joint tortfeasors and the hospital has no right of contribution with respect to any claim asserted by the plaintiff.

The seminal case on this issue is *Wilson v. Krasnoff*, 560 A.2d 335 (R.I.1989). In *Wilson*, a settling tortfeasor/landowner brought an action for contribution against physicians, claiming that the physicians who treated the plaintiff after she was injured by the landowner's negligence committed malpractice. The Rhode Island Supreme Court held that the physicians were not joint tortfeasors under the Uniform Contribution Among Joint Tortfeasors Act. The Court recognized two elements to the definition of "joint tortfeasor" under the Act, that is, the parties must have negligently contributed to another's injuries and also have engaged in common wrongs.[1] *Id.* at 339. The Court contrasted the law in Rhode Island with that of other jurisdictions:

> Under [the general common-law] rule, the plaintiff may bring suit against the original tortfeasor and obtain full satisfaction from that tortfeasor even though one or more subsequent tortfeasors aggravated the injury through medical malpractice. Rhode Island law, however, rejects this rule as being inherently unsound. **Under Rhode Island law, a tortfeasor is liable only for the injury caused by his or her negligence. An initial tortfeasor is not liable for additional harm caused by subsequent medical malpractice as such malpractice is an independent intervening cause.**

*Id.* at 340, emphasis supplied.

Applying this rationale alone to the state law claims, the Hospital's allegations do no more than place Jen Weiss in an identical circumstance to that of the defendant landowner in

---

[1] R.I.G.L. § 10-6-2: For the purposes of this chapter, the term "joint tortfeasors" means two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them; provided, however, that a master and servant or principal and agent shall be considered a single tortfeasor.

*Wilson v. Krasnof.* To the extent the Hospital claims Jen Weiss "was negligent in dropping Maximus Wadensten," this occurred before she took her infant charge for care to the defendant Hospital, and thus before the defendants' acts of negligence. Therefore, as a matter of law, as an initial tortfeasor Ms. Weiss is "not liable for additional harm caused by subsequent medical malpractice as such malpractice is an independent intervening cause." The Supreme Court leaves no ambiguity in it's holding in this regard, going on to state: "Further, we note that had Wilson [plaintiff] pursued her action against Krasnoff [defendant landowner], he would be liable for only the injury caused by his negligence regarding the condition of the stairs and would not be liable for injury caused by subsequent medical malpractice." *Id.* at 341.

In *Wilson*, Rhode Island Supreme Court further holds that a second element necessary to a joint tortfeasor relationship is missing between the landowner and the physicians.

> Next we consider the opportunity of each joint tortfeasor to guard against the negligence of the other or others. Krasnoff, the building owner, had possession and control of the stairs in the building in which Wilson worked. None of the other defendants had control over or knowledge of the condition of the stairs. Thus the physicians did not have the opportunity guard against Krasnoff's negligence. Similarly, Krasnoff had no opportunity to guard against the negligence of the doctors.

*Wilson,* 560 A.2d at 340. This necessary element of joint control is likewise entirely absent from the relationship between Jen Weiss and South County Hospital. Neither before nor after the Defendant Hospital saw and discharged Maximus did the Hospital and Jen Weiss have the right to exercise control over one another. Without this necessary element, Rhode Island law permits no right of contribution for South County Hospital from Jennifer Weiss.

Several district courts in this and other circuits have denied third-party complaints where applicable state or federal law do not create a right of contribution or indemnity. In

this First Circuit, in *U.S. v. Gov't Development Bank,* 132 F.R.D. 129 (D.P.R. 1990), the District Court refused to permit impleader of a fiscal agent where the plaintiff Government alleged negligent handling by the Defendant Bank of food stamps. The Defendant Bank sought to base its third-party claim on the failure by the fiscal agent to develop facilities, controls, guidance, security and instruction to properly administer the Defendant Bank's activities. Although arguably the first- and third-party claims relied upon many of the same facts, the Court held, "Whatever negligence [the fiscal agent] incurred in during [sic] the performance of its administrative responsibilities, it is separate and independent from the negligence imputed to [defendant bank] in the execution of the program ... This being so, [the fiscal agent]'s alleged negligence, if any, can in no way derive from the negligence attributed to [defendant bank]." *Id.* at 132. Finally, the Court notes that as the defendant has no right of contribution under the law of the jurisdiction – Puerto Rico – there can be no basis for a third-party claim for contribution. *Id.* at 133.

In *Estate of Nobile v. U.S.*, 193 F.R.D. 58 (D.Conn. 2000), where the main claim arose under the Federal Tort Claims Act (FTCA) for medical malpractice against the Veteran's Administration, the Court denied the VA's motion to implead a private hospital that provided care after the alleged negligence. Finding that under applicable state law the VA had no right to the apportionment it sought, the court concluded that it therefore must deny impleader:

> ... there must be a substantive right to the relief sought by the United Sates against the third-party defendant. 6 Wright, Miller & Kane § 1450. "A defendant cannot implead a third party unless he has a proper claim against the third party under the applicable substantive law, based on plaintiff's claim of liability against the defendant... It is irrelevant whether the basis of the claim is indemnity, contribution, or some other theory."

*Estate of Nobile* 193 F.R.D. at 60. See also *Morris v. Lenihan,* 192 F.R.D. 484, 488 (E.D.Pa. 2000)("Thus, a defendant may not implead a third party solely because that party may be

liable to the plaintiff; rather, defendant must show that the third party is directly liable to the defendant in order to properly implead the third party.")

The only source of a right to contribution for defendant South County Hospital arises from the Rhode Island joint tortfeasor statute, R.I.G.L. § 10-6-1 *et seq.* Rhode Island law does not recognize joint tortfeasor status between parties who are separated by an act of medical negligence committed by one of the parties. Therefore, in the absence of a direct liability between South County Hospital and Jennifer Weiss, South County Hospital has no valid claim against Jennifer Weiss and this Court has no jurisdiction over an invalid third-party complaint.[2]

## II. The hospital's decision to delay its motion for leave to file a third party complaint notwithstanding that it knew or should have known of the factual and legal bases for its motion long before the close of discovery creates undue delay and prejudice and unwarranted expense and, for these reasons, the hospital's motion ought to be denied.

Defendant SCH is not entitled, as of right, to the impleader it seeks and therefore must ask this Court to find that it has a "colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceeding." *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 393 (1st Cir. 1999) See also *Diar v. Genesco, Inc.*, 102 F.R.D. 288, 289 (N.D.Ohio 1984)(Rule 14(a) motions are freely granted when made in good faith; "However, discretion to grant such a motion rests with the court, and the timeliness of the motion is an important factor").

In order to meet its burden of demonstrating no undue delay or prejudice, the Hospital relies upon its assertion that it could not have proceeded earlier because it only

[2] The Defendant Hospital seeks contribution with respect to each and every one of the plaintiff's claims against it. However, with respect to plaintiff's claims under EMTALA and those based upon corporate negligence and negligent credentialing the putative third party, Jennifer Weiss, cannot be liable because the claim can by its terms only arise from the conduct of a hospital and its agents.

became aware of evidence to support its motion to implead near the end of discovery.[3] The Hospital's burden in this regard is significant as the Hospital waited to request leave to add a third party until the case stood in a posture nearly ready for trial.[4] The plaintiff's complaint was filed eleven months ago and Defendant South County Hospital answered the complaint ten months ago. Coming as it did on the day discovery closed, the hospital's motion follows extensive discovery efforts, including:

- A Rule 16 pre-trial conference held "in order to facilitate an informed discussion of the merits of the case" held on October 27, 2004;

- A telephonic conference with the Court addressing time necessary for completion of discovery held on February 3, 2005;

- 16 depositions, comprising over 50 hours and over 2,000 pages;

- Responses to production by the Hospital coming over four months in eleven separate pleadings;

- 14 substantive motions and memoranda of law;

- Two lengthy hearings before Magistrate Almond addressing discovery issues;

- Discovery conference attended by seven counsel lasting three hours.

In addition, pursuant to a discovery schedule agreed to by South County Hospital, non-expert discovery is now closed and no longer available to the parties, plaintiff's experts and their reports must be filed in less than two weeks, a court conference concerning dispositive

---

[3] In fact, Defendant South County Hospital additionally, and incredibly, asserts that it is seeking to amend its answer to admit its status as an emergency department covered by EMTALA because it learned of its covered status during discovery! 42 U.S.C. § 1395dd *et seq*, which defines a "covered ED" clearly applies to the hospital. Indeed, according to the testimony of the South County Hospital Vice President of Regulatory Compliance, the Hospital had been training employees on EMTALA and taking steps to update its own knowledge for several years before this incident.

[4] South County Hospital already has accomplished delay and obstruction throughout the course of discovery, providing neither documents nor answers to interrogatories for three months, supplementing responses <u>on the day of discovery closure</u> with policies that apply <u>by their terms</u> to the Emergency Department, moving (without success) to prevent 30(b)(6) depositions pertaining to the central issues of supervision and EMTALA enforcement, withholding <u>without asserting objections</u> production of bylaws and Emergency Department policies until after the deposition of the Chief of the Emergency Department and responding to a 30(b)(6) deposition with a person who admitted having no knowledge of subjects of the deposition, *inter alia*.

motions is scheduled in less than two weeks, dispositive motions must be filed in less than one month and trial is scheduled in four months.

However, the Hospital's attempt to avoid a finding of undue delay and prejudice by claiming that the grounds for its motions were only just revealed does not stand up to scrutiny. <u>In fact, every element the Hospital alleges has been known to the Hospital since the day Maximus was injured.</u>

In paragraph 8 of Count I of its Third-Party Complaint [proposed], South County Hospital first alleges:

> During the course of providing child care to Maximus Wadensten, Third Party Defendant Jennifer Weiss was negligent in dropping Maximus Wadensten, causing plaintiff to sustain personal injury.

South County Hospital's nurse practitioner documented exactly this information in South County Hospital medical records on October 25, 2003

> **<u>Mechanism of Injury:</u>** Picking baby up out of stroller, dog banged into nanny and baby was dropped 1-2 feet on to floor, struck head & back..

*See* South County Hospital Emergency Physician Record of 10/25/03, 16:00, attached as Exhibit 1.

A day or so after the incident, South County Hospital Risk Manager Deborah Randall spoke with Pamela Burlingame at which time she believed Nurse Burlingame told her everything she remembered. See Deposition of Deborah Randall, page 183, attached as Exhibit 2. According to Nurse Burlingame, she was "told by the babysitter that she was lifting him up out of a stroller and the dog bumped into her and she dropped him", information she presumably gave to South County Hospital's Risk Manager when interviewed by her.[5] The content of the Risk Manager's interview certainly came to the

[5] See May 20, 2005 deposition of Pamela Burlingame, page 140-141, attached as Exhibit 3.

attention of counsel for South County Hospital, pursuant to the functions of the Risk Management department, which include:

- Support and guidance to hospital staff from the discovery through trial phases of a lawsuit;
- Maintenance of investigation, claim and litigation files;
- Recording, collecting, documenting, maintaining and providing to hospital counsel any requested information.

*See* South County Hospital Risk Management Plan received on June 30, 2005 in Defendant's 10th Supplemental Response to Request for Production, attached as Exhibit 4.

Defendant South County Hospital was aware at least through the medical record in its possession and a statement taken shortly after the incident, by the person designated to assist in investigation and litigation, that Jennifer Weiss dropped Max and caused an injury. This is the only factual basis for the first allegation of negligence in its Third Party Complaint. In its memorandum of law the Hospital claims to have learned these facts not just during discovery but recently at Ms. Weiss' deposition. However, as the above material shows, this claim is inaccurate and misleading.

In paragraph 9 of Count I of its Third-Party Complaint [proposed], South County Hospital next alleges:

> During the course of providing child care to Maximus Wadensten, Third Party Defendant Jennifer Weiss was negligent in delaying return to the South County Hospital Emergency Department contrary to the Emergency Department's discharge instructions, causing plaintiff to suffer personal injury.

All of the information contained in this allegation was known to the Defendant Hospital within days of the incident. The medical records from the infant's first and second visits clearly document the interval between these two presentations, so simply based on the time stamps on the medical records the hospital was aware of the "delay" from discharge to

return. The record from the second visit also documents Ms. Weiss' activities between those visits.

> **Witnessed?** yes, by nanny – nanny took child home after visit here earlier. Put child for nap & when had difficulty arousing child, gave child a bath, after bath still poorly arousable, called mother & brought child here.
>
> **Injury**: head – 4 hours ago seen for bump R occiput.
>
> **Preceding symptoms/cause of seizures;** recent head injury.

See South County Hospital Emergency Physician Record of 10/25/03, 19:55, attached as Exhibit 5.

Neither did the Hospital need to rely upon discovery to learn the content of the discharge instructions that it alleges Ms. Weiss negligently failed to follow. Not only are the written discharge instructions contained in the hospital's records and computer system, the Risk Manager's interview with Nurse Burlingame specifically addressed the contents of the discharge instructions given to Linda Wadensten and Jennifer Weiss. [6]

In its memorandum of law in support of its Motion to File Third Party Complaint, the Hospital cites Jennifer Weiss' deposition testimony as the source of the fact that "it was almost one and half [sic] hours between the time [Jennifer Weiss] first noticed Maximus experiencing those symptoms and the time she returned him to the Hospital", going on to allege "Ms. Weiss may well be liable in part for any delay of further treatment …" Memorandum at page 3.

However, the Hospital was aware from its own records and interview with Burlingame in October of 2003 that at least one and one half hours passed from the time Jennifer Weiss observed Max's symptoms while trying to waken him and his return. The

[6] Q. Now, why did you speak with Pamela Burlingame?
A. Because after reviewing the record I had a questions about the discharge instructions that she gave at the time of the first emergency department visit.
Deposition of Deborah Randall, page 180, Exhibit 2.

one and one half hours corresponds precisely with the discharge instructions Nurse Burlingame gave to Linda Wadensten and Jennnifer Weiss, instructions the Hospital learned in detail when Nurse Burlingame was interviewed by the Risk Manager. Those discharge instructions were related by Defendant Burlingame in her answer to interrogatory number 16:

> The conversation [with Linda Wadensten and Jennifer Weiss] focused on the surveillance of Maximus upon discharge. The guidelines for this surveillance was [sic] provided in written form by printed discharge instructions. Linda stated that Maximus was about due for a nap and I asked her how long his usual nap would last. **She indicated that he would normally sleep for about two hours**. She was told to check him periodically during that time period. Specifically, she was told to watch for any signs of distress, unusual breathing or vomiting … **The women were told to rouse Maximus at the end of the nap period if he did not wake up on his own.**

Defendant Burlingame Answer to Interrogatory Number 16, attached as Exhibit 6.

According to the medical record (above) from the second visit, Ms. Weiss had difficulty arousing Max from his nap and that was the symptom that ultimately prompted her to bring Max back to the Emergency Department. Given the timing of their discharge from the Emergency Department – 4:18 p.m. – and Burlingame's statement that she knew when she discharged Max that he was going to sleep two hours, he slept from about 4:30 p.m. until 6:30 p.m. As the defendant's own medical record shows, Max was brought back to the Emergency Department at 8:00 p.m. By the time the Risk Manager interviewed Nurse Burlingame, the Hospital knew that, according to the Hospital's own discharge instructions to awaken the Max after two hours, the time period from awakening to return was at least one and one half hours. The Hospital knew all of these facts almost two years before seeking to add Jennifer Weiss as a third party based simply on this evidence.

By the time South County Hospital propounded interrogatories to the Plaintiff one year later, in October of 2004, it had clearly made a decision to focus on the time period

between the two visits and the people involved. The Hospital asked about "the events that occurred between the minor plaintiff's first and second visit to South County Hospital on or about October 25, 2003", "the name address and relation to the minor plaintiff of all persons in contact with the minor plaintiff during such period," whether discharge instructions were followed and by whom. The Plaintiff's answers conformed entirely to the information the Hospital already had. (See Interrogatories Number 4 and 5, and Plaintiff's answers thereto, attached as Exhibit 7).

As set forth above, South County's Hospital's delay in filing this motion was lengthy and without justification. These are factors courts routinely consider when determining whether to grant a Rule 14(a) motion.

> [T]he pertinent part of [Rule 14] provides that "[a]ny party may move to strike the third-party claim, or for its severance or separate trial." This provision has been explained by the Advisory Committee on the 1963 amendment to Rule 14(a) as an indication of the court's power to strike a third-party claim "if it is obviously unmeritorious and can only delay or prejudice the disposition of plaintiff's claim." See: Advisory Committee Note on the 1963 Amendment to Rule 14(a), reprinted in 28 U.S.C.A. See also Wright and Miller, Federal Practice and Procedure: Civil Section 1454 ... It has been stated that "[a]mong the factors which must be considered in exercising ... discretion [whether to allow a third-party complaint] are such matters as possible prejudice to the plaintiff, complication of issues in the trail, likelihood of causing delay, timeliness of the motion to implead, the merit or substance of the third-party complaint, and additional expense to the parties." *Kopan v. George Washington University*, 67 F.R.D. 36, 38 (D.D.C. 1975).

*Perez Cruz v. Fernandez Martinez*, 551 F. Supp. 794, 798-99 (D.C.PR 1982). See also *Zeus Projects Ltd. v. Perez Y Cia. De Puerto Rico*, 187 F.R.D. 23 (D.C.PR 1999)(citing same factors and denying Rule 14(a) motion as "leave to file a third-party compliant should be denied if the claim will disadvantage or delay the original action or if the third-party claim lacks merit.")

All of the factors cited above are raised by South County Hospital's motion to implead and mitigate against it.

- Under applicable Rhode Island law, the Defendant's motion lacks merit as there is no joint tortfeasor liability.
- The motion is not timely; to the contrary it was delayed in spite of specific knowledge, and facts contained in the Defendant's own records.
- Much of the discovery already conducted would have to be repeated, incurring additional expense to all parties.
- Should a third party be added at this stage when discovery has closed, justice to the third party would require the case be delayed for purposes of further discovery.
- Given the law on joint tortfeasor liability, the third party would undoubtedly file one or more dispositive motions, requiring additional time for briefing.
- The Plaintiff would be prejudiced by a delay not only because she needs and is entitled to resolution within a reasonable time, but also because of the expenses associated with caring for her brain-damaged child.
- Issues at trial would be complicated by a complaint that, even if it had merit, does not present a defense to the federal claim under EMTALA.

These factors have been applied and have compelled a denial of motions to implead by many other courts. In *Riccitelli v. Water Pik Technologies*, 203 F.R.D. 62 (D.C.NH 2001) Judge Muirhead denied a motion to implead for contribution. The cases are similar on many counts relied upon by the district court. The trial was scheduled four months from the filing of the motion and "some of the third-party claims are subject to obvious motions to dismiss … significant additional time would be necessary to accommodate new discovery and briefing efforts." The District Court also recognized that "these defendants and their counsel have engaged in discovery delays … and, despite knowledge, have released discovery responses piecemeal." Finally the Court noted:

> The plaintiff has sustained grievous injuries and deserves his day in court in early 2002. Because the third-party complaint would delay the plaintiff's efforts to fully prosecute his case, the defendants' motion must be denied.

> *See Venuti v. Riordan*, 702 F.2d 6, 9 (1st Cir. 1983)(no abuse of discretion in failing to join a third-party defendant under Fed.R.Civ.P. 14(a) where joinder would have meant added delay for the plaintiff.)

*Riccitelli v. Water Pik Technologies*, 203 F.R.D. 62 (D.C.NH 2001).

In *Diar v. Genesco, Inc.*, 102 F.R.D. 288, 290 (N.D.Ohio 1984) the District Court denied impleader where, despite the defendants' assertion that they were not aware of the relevant facts until the plaintiff's deposition, the defendants had known the relevant facts for nearly two years, granting the motion would "require reopening discovery" and would "clearly ... deprive the [plaintiffs] of their hope of receiving reasonably expeditious resolution of their case." In *Diar*, as here, "[a]t the pretrial ... when the Court established a schedule for the completion of discovery, the filing of motions, and the setting of a trial date, the defendants gave no indication that a third party complaint was contemplated." Assessing these circumstances, the Court held: "Since the defendants are responsible for the untimeliness of the motion, their interests weigh less favorably."

Similar decisions have been made in *Rodeheaver v. Sears, Roebuck and Co.*, 34 F.R.D. 488 (N.D.Ohio 1964)("However, the Court cannot condone a seven-month wait which terminates on the eve of a pretrial proceeding ... The movant wishes to avoid duplicative litigation by bringing all possible parties before the Court; those already before the Court are entitled to a reasonably expeditious adjudication. Since the movant is at least partly culpable in not moving sooner, his interest weighs less favorably"), by the esteemed Judge Merhige in *Crocket v. Virginia Folding Box Co.*, 173 WL 188 (E.D.Va. 1973)(given the high probability that additional pre-trial motions and discovery would delay the case beyond the five months to trial led to denial of motion where defendant not deprived of any defenses), *City of Wichita v. Aero Holdings, Inc.*, 2000 WL 1480490 (D.Kan.2000)(Rule 14(a) motion denied where defendant showed little research effort in briefing and addition of parties would require new

discovery orders and delay) and in *Stingley v. Raskey*, 1995 WL 696591, 5 (D.Alaska 1995)("Courts are willing to grant the motion as long as the delay is either explained by the movant or does not offend the doctrine of laches, prejudice the parties, or delay the trial.")

No prejudice will inure to the Defendant by denying the third party claim. Defendant South County Hospital asserted in its original answer intervening or superseding events as its thirty-first defense. And even if the Defendant has a valid claim for contribution, it can be brought up to one year after payment in the event payment is made.[7]

Defendant South County Hospital has had, for over twenty-one months, all of the evidence it relies upon now for a third-party complaint. However, this Defendant chose to delay its request to the Court to file a third-party complaint until the case before this Court stood in a posture that makes adherence to the agreed scheduling order entirely impossible. The Plaintiff should not have to bear the consequences of this choice with delay of her case and expensive and duplicative litigation.

[7] "But the one-year limitation period contained in § 10-6-4 allows any joint tortfeasor who has been singled out for suit by the injured party to have a one-year postpayment grace period within which to seek contribution from his or her cotortfeasors who, according to Hawkins, ought to reimburse her for their respective pro rata shares of the discharged common liability." *Hawkins v. Gadoury,* 713 A.2d 799, 802 (R.I. 1998)

## CONCLUSION

For the foregoing reasons, the Court ought to deny defendant's motion for leave to file a third party complaint.

Plaintiff,
By her Attorneys,

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

**CERTIFICATION**

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 8th day of July, 2005 by Denise Laborte:

Jay Elias, Esq.
Ratcliffe, Burke, Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

Mark T. Nugent, Esq.
Paul V. Sullivan, Esq.
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

Denise Laborte