**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LINDA WADENSTEN, Individually and** | : | |
| **p.p.a. MAXIMUS WADENSTEN** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 04-326S** |
| | : | |
| **SOUTH COUNTY HOSPITAL;** | : | |
| **PAMELA BURLINGAME, RNP;** | : | |
| **ROBERT J. CASCI, JR., D.O.;** | : | |
| **TIMOTHY DRURY, M.D.** | : | |
| **JOHN DOE, ALIAS; JANE DOE, ALIAS;** | : | |
| **JOHN DOE CORPORATION, ALIAS** | : | |
| **Defendants.** | : | |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF MEDICAL LITERATURE AND NOTES OF DEFENDANT PAMELA BURLINGAME, RNP**

Now comes plaintiff Linda Wadensten and moves pursuant to Fed. R. Civ. P. 34 and 37(a)(2), and Local Rule 12 for an Order of this Court compelling defendant Pamela Burlingame, R.N.P. to produce to plaintiff in response to plaintiff's request for production served on June 14, 2005 (copy attached as **EXHIBIT A**), the medical literature referenced by defendant Burlingame in her deposition and the notes she prepared regarding the minor plaintiff Maximus Wadensten's care and treatment on October 25, 2003. The notes in question were created by defendant Burlingame on October 26 and 28, 2003. At her deposition on May 20, 2005, defendant Burlingame testified that she referred to her notes in the course of preparing her answers to interrogatories to refresh her recollection as to the incident. *See,* Burlingame Dep. 5/20/05 at 17 (partial copy attached as **EXHIBIT B**). Defendant Burlingame further testified at her deposition that she reviewed and consulted specific medical texts and literature to refresh her memory with respect to care and treatment

of the injury that Max presented with on October 25, 2003. *See,* Burlingame Dep. at 19-24. As further grounds, plaintiff states as follows:

1. This is a medical negligence and EMTALA action in which plaintiff claims in part that on October 25, 2003, seven-month old Maximus Wadensten suffered significant and permanent injuries as a proximate result of the negligent failure of defendant, nurse practitioner Burlingame to diagnose in the emergency room of South County Hospital that Max had developed intracranial bleeding following a bump to his head.

2. In response to plaintiff's interrogatory #25, which asked whether defendant Burlingame documented anything about Max in any place other than the medical record, defendant Burlingame provided a supplemental answer, in which she disclosed that she created notes regarding Max's care and treatment on the day following the occurrence (October 26, 2003) and two days later (October 28, 2003).

3. Defendant Burlingame testified at her deposition that she referred to her notes during the course of preparing her answers to interrogatories to refresh her recollection as to the incident. Burlingame Dep. at 17.

4. Defendant Burlingame further testified at her deposition that she reviewed and consulted specific medical texts and literature to refresh her memory with respect to care and treatment of the injury that Max presented with on October 25, 2003, and to reaffirm in her own mind that she rendered what she considered to be appropriate care and treatment to Max. *See,* Burlingame Dep. at 19-24.

5. Based on this deposition testimony from defendant Burlingame, on June 14, 2005, plaintiff served a request for production on her requesting: (a) copies of each piece of medical literature that she reviewed in connection with this action, particularly those

referenced in her deposition at pages 19 *et seq.*, and (b) her notes of October 26 and 28, 2003. *See* RFP 6/14/05, **EXHIBIT A**.

6. On July 12, 2005, defendant Burlingame served a response in which she objected to the production of the requested materials based on the work-product doctrine and the attorney-client privilege and, with the exception of reiterating the name of a publication referenced in her deposition, did not produce the documents requested. *See,* Response (copy attached as **EXHIBIT C**).

7. Given defendant Burlingame's deposition testimony, even assuming *arguendo* that defendant properly asserted work-product and attorney-client objections to the production of the materials,[1] there is no merit in her refusal to produce the requested materials based on work-product and attorney-client objections. *Cf., e.g., In re Joint Eastern and Southern District Asbestos Litigation,* 119 F.R.D. 4, 6 (E & S.D.N.Y. 1988)(disclosure of documents over work-product objection compelled where used to prepare crucial witness for deposition testimony; disclosure necessary to "test the credibility and memory of the witness and to determine what effect the document review had upon the witnesses' testimony").

WHEREFORE, plaintiff respectfully submits that the Court ought to grant the within motion and issue an order compelling defendant Burlingame to produce the requested documents within 5 days.

---

[1] Plaintiff does not concede that the objections are properly asserted. Here, defendants have the burden of proving that the subject documents are protected from disclosure as work product or by the attorney-client privilege. *See, e.g., Gulf Islands Leasing Inc. v. Bombardier Capital Inc.*, 215 F.R.D. 466 (S.D.N.Y. 2003)(work product), *Heathman v. United States District Court*, 503 F.3d 1032, 1033 (9th Cir. 1974)(attorney-client privilege).

Plaintiffs,
By their attorneys,

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
DELUCA & WEIZENBAUM, LTD.
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

**CERTIFICATE OF ATTORNEY**

I, Michael T. Eskey (#3035), hereby certify that pursuant to Fed. R. Civ. P. 37, I made a good faith effort by conferring with opposing counsel to resolve the pending discovery issues raised by the foregoing Motion by several conferences with counsel for defendant Burlingame.

**CERTIFICATION**

I hereby certify that I mailed a true and accurate copy of the within to Jay Elias, Esq., Ratcliffe, Burke, Harten & Elias, LLP, 1600 Financial Plaza, Providence, RI 02903; Mark T. Nugent, Esq., Morrison, Mahoney, LLP, 121 South Main Street, Suite 600, Providence, RI 02903 on this 26th day of July 2005.

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA WADENSTEN, Individually and p.p.a. MAXIMUS WADENSTEN<br>Plaintiff,<br>v.<br><br>SOUTH COUNTY HOSPITAL;<br>PAMELA BURLINGAME, RNP;<br>ROBERT J. CASCI, JR., D.O.;<br>TIMOTHY DRURY, M.D.<br>RHODE ISLAND EMERGENCY PHYSICIANS, INC.;<br>JOHN DOE, ALIAS; JANE DOE, ALIAS;<br>JOHN DOE CORPORATION, ALIAS<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 04-326S |

**PLAINTIFF'S REQUEST FOR PRODUCTION PROPOUNDED TO DEFENDANT PAMELA BURLINGAME, R.N.P.**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff requests the Defendant, Rhode Island Emergency Physicians, Inc., produce for copying and/or inspection, at 199 North Main Street, Providence, RI within thirty (30) days, true and complete copy of those materials listed below in the possession and/or control of defendant Pamela Burlingame, R.N.P. **If objection is made to part of any item or category, the part shall be specified and inspection permitted of the remaining parts. If claim is made that any portion of the material requested is privileged or subject to protection as trial preparation material, Plaintiff requests that Defendant make such claim expressly and describe the nature of the documents, communications, or things not produced or disclosed in a manner that will enable Plaintiff to assess the applicability of the privilege or protection claimed.**

1. Each piece of medical literature reviewed by you following and in connection with this action, including but not limited to that literature referenced in your deposition at pages 19, *et seq.*

2. Any and all statements authored by you following and in connection with this action, including but not limited to those identified in your supplemental answer to interrogatory number 25.

A. No.
Q. Did you have the notes with you when you were drafting the answers to interrogatories?
MR. NUGENT: Objection.
A. They were at my home.
Q. But I mean, did you -- were you referring to them, did you look at them during the course of preparing your answers to interrogatories?
A. I believe I did.
Q. I take it, to refresh your recollection as to the incident?
A. Yes.
MR. GALAMAGA: Objection.
MR. NUGENT: Objection.
Q. What do you recall about your conversation with Dr. Casci?
MR. GALAMAGA: I am just going to object to the extent of the conversation was a part of the peer review process.
MS. WEIZENBAUM: That hasn't been established so --
MR. GALAMAGA: It hasn't been established one way or the other.
Q. Well, let me ask you this; when you spoke with either Dr. Casci or Dr. Drury, did you understand



yourself to be at a committee meeting?
A. No.
Q. I take it from your earlier answers, but just so we are clear, you didn't understand it to be a formal meeting of any kind, correct?
A. That is correct.
Q. So tell me about your conversation with Dr. Casci?
MR. GALAMAGA: Same objection.
A. The evening of the incident, we spoke about most of the events from the time that I initially saw the child until he became involved in the case and then, through his involvement in the case, and then the followup afterwards from the police department and from the Department of Children & Families, the fact that we had spoken to, one of us, I am not sure specifically which people spoke to who, but who made notifications, but that those things had been done and there were just some circumstances regarding the case that we talked about.
Q. Notifications to whom?
A. To specifically the Department of Children & Families, I believe Dr. Casci made that notification.
Q. Okay, we will get back to that. Did you speak with



anybody outside of the hospital concerning this incident, other than your attorneys?
A. No.
Q. So I asked you a little bit ago what you had reviewed in preparation for today's deposition; and you said you reviewed your answers to interrogatories and your professional resume, is that right?
A. Yes.
Q. Anything else?
A. No.
Q. Since the time of this incident, have you reviewed any medical literature that in any way pertains -- that you understand to pertain to this baby's presentation and outcome?
MR. NUGENT: Objection.
A. At what time? Immediately after or any time since then?
Q. At any time since then.
A. Yes, I reviewed some materials that I considered relevant to my knowledge base of the particular kind of injury that occurred and the outcome.
Q. Let me first start with what material you reviewed in that regard?



A. Specifically I looked at a pediatric advanced life-support provider manual.
Q. Anything else?
A. I looked at a review textbook for the certification in emergency nursing.
Q. Anything else?
A. That is the only ones that I can recall.
Q. So you didn't do a medical literature search, or anything in that regard?
A. No.
Q. These two items that you looked at, were those things that you retrieved yourself or are they things somebody gave to you?
A. Those are things I retrieved myself.
Q. With respect to the pediatric advanced life-support manual, what in that was relevant to you with respect to this incident?
MR. GALAMAGA: Objection.
MR. NUGENT: Objection to the form as well.
A. I was looking to refresh my memory of what actually is defined as different kinds of head injuries.
Q. Why did you look to that manual to look for definitions of kinds of head injury?
A. To clarify my mind what actually had become the

final diagnosis in the emergency room and to sort of see if there was anything that I might have done differently or wasn't aware of.
Q. When you say you wanted to refresh your memory as to different kinds of head injury, what do you mean by different kinds of head injury?
MR. GALAMAGA: Objection.
A. There is a full spectrum of injuries to the head that can include very minor head injuries all the way to penetrating head injuries, and different kinds of bleeding in the head and how those are defined and what specific symptoms and signs accompany them.
Q. What was your understanding -- you said you wanted to clarify the final diagnosis in the emergency department. What was your understanding of the final diagnosis?
MR. NUGENT: Objection.
MR. GALAMAGA: Objection.
A. I believe that the final diagnosis was an epidural hematoma.
Q. What did you learn when looking at that book as far as -- well, strike that. When you looked at that book, did you see anything that was of any significance to this baby's presentation and your



care?
MR. GALAMAGA: Objection.
MR. NUGENT: Objection.
A. Based on my review of that information, I believed that I had done the appropriate physical exam, had looked for the appropriate signs and symptoms of severe head injuries.
I felt, after I read that information, that I hadn't missed anything that was present at the time of the initial visit.
Q. What did you read in that manual that you found relevant to this conclusion that you drew?
MR. NUGENT: Objection.
A. I don't understand what conclusion I drew.
Q. Well, you drew the conclusion that you believed you'd done everything appropriate; you looked for the appropriate signs and symptoms, etc., as you just indicated. What did you read in this manual that led you to that conclusion?
MR. GALAMAGA: Objection.
A. I felt that it confirmed my belief that there was no evidence of intracranial bleeding at the time of the initial visit.
Q. What did you read in this book that led you to that conclusion?



MR. GALAMAGA: Objection.
MR. NUGENT: Objection.
A. The same things that I looked for during the physical exam of the child; change in mental status, abnormal pupillary configuration, evidence of bleeding in the eye, behind the ear -- behind the eardrum -- excuse me -- bruising at the base of the skull, behind the ears. Any abnormalities in the respiratory rate or observable circulatory functions.
Q. Anything else?
A. No.
Q. So if I understand you correctly, this manual sets forth those signs and symptoms that, if they are present, may indicate intracranial bleeding?
A. Yes.
Q. And it is your understanding that these signs and symptoms are the signs and symptoms that should be looked for in a baby who presents with head injury?
A. Yes.
MR. NUGENT: Objection.
Q. After looking at this book, you decided that you had done everything that was indicated on the list in this book?
MR. NUGENT: Objection.



MR. GALAMAGA: Objection.
A. Not necessarily. I looked at that information to reaffirm in my own mind the signs and symptoms that I would have been looking for, would have seen, if that injury had been detectable or present at the time of the first visit.
Q. Do you recall whether, in this manual, there was any indication as to the age range that it was covering?
MR. NUGENT: Objection.
A. I don't believe there is any specific age range; it is for all pediatrics.
Q. Do you recall whether there was anything in this manual that indicated the circumstances under which diagnostic imaging should be performed?
MR. NUGENT: Objection.
A. It is not that kind of manual.
Q. It is more of emergency care manual, right?
A. Yes.
Q. Sort of, like, acute emergency care even for EMTs?
A. It covers everything. It is not specifically for nurse practitioners or nurses. It is for anyone involved in emergency care.
Q. So it is the manual that, if you are an EMT and you are going to be transporting children, this is a manual that you would read?

REC'D JUL 1 3 2005

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA WADENSTEN, individually and<br>p.p.a. Maximus Wadensten<br>*Plaintiff* | : | |
| vs. | : | C.A. No.: 04-0326 S |
| SOUTH COUNTY HOSPITAL;<br>PAMELA BURLINGAME, RNP;<br>ROBERT J. CASCI, JR., DO;<br>TIMOTHY DRURY, MD;<br>RHODE ISLAND EMERGENCY<br>PHYSICIANS, INC.;<br>JOHN DOE, Alias; JANE DOE, Alias;<br>and JOHN DOE CORPORATION, Alias<br>*Defendants* | : | |

**DEFENDANT PAMELA BURLINGAME, R.N.P.'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION**

**REQUEST NO 1**: Each piece of medical literature reviewed by you following and in connection with this action, including but not limited to that literature referenced in your deposition at pages 19, *et seq*.

**RESPONSE NO. 1:**

Objection. The defendant objects on the grounds that this request is overly broad. The defendant further objects on the grounds that any medical literature reviewed in connection with this matter was done so in anticipation of litigation and/or as a result of litigation, and responding to this request would require the defendants to disclose attorney-client and work-product doctrine protected materials and matters. As such, the defendant asserts the work-product doctrine and attorney-client privileges.

Without waiving these objections, and as to solely the publications the defendant referenced at her deposition: PALS Provider Manual. (2002). Hazinski, M. F., Zaritsky, A. L., Nadkarni, V. M., et. al. (Eds.). Dallas, TX: American Heart Association. The publication is approximately 450 pages long, and available from its publisher. The defendant will supplement this response with information pertaining to the second publication referenced in the defendant's deposition.

**REQUEST NO 2.** Any and all statements authored by you following and in connection with this action, including but not limited to those identified in your supplemental answer to interrogatory number 25.

**RESPONSE NO. 2:** Objection. The defendant objects to this request on the grounds that it seeks materials prepared in anticipation of trial and/or in anticipation of litigation, and is protected by the attorney-client privilege and the work-product doctrine. The defendant provides the following privilege log: (1) Date created: 10-26-03; notes regarding Maximus Wadensten care & treatment on 10-25-03; and (2) Date created: 10-28-03; notes regarding discharge instructions given to Linda Wadensten and nanny at time of Maximus Wadensten discharge from first visit.

PAMELA BURLINGAME, RNP

By her Attorneys,

MORRISON MAHONEY LLP

Paul V. Sullivan

Mark T. Nugent, #2637
Paul V. Sullivan, #5712
121 South Main Street, Suite 600
Providence, RI 02903-7141
Tel: (401) 331-4660
Fax: (401) 351-4420

**CERTIFICATION**

I hereby certify that on this 12th day of July, 2005 a true copy of the foregoing was mailed, postage pre-paid, and sent by facsimile to:

Counsel for Plaintiff
Amato A. DeLuca, Esq.
Miriam Weizenbaum, Esq.
DeLuca & Weizenbaum, Ltd.
199 North Main Street
Providence, RI 02903

Counsel for Co-Defendant Hospital
Paul F. Galamaga, Esq.
Ratcliffe, Burke Harten & Elias
1600 Financial Plaza
Providence, RI 02903

Katy N Berdugo



591969v1