UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA WADENSTEN, individually and p.p.a. Maximus Wadensten<br>*Plaintiff* | : | |
| vs. | : | C.A. No.: 04-0326 S |
| SOUTH COUNTY HOSPITAL;<br>PAMELA BURLINGAME, RNP;<br>ROBERT J. CASCI, JR., DO;<br>TIMOTHY DRURY, MD;<br>RHODE ISLAND EMERGENCY PHYSICIANS, INC.;<br>JOHN DOE, Alias; JANE DOE, Alias;<br>and JOHN DOE CORPORATION, Alias<br>*Defendants* | : | |

**DEFENDANT PAMELA BURLINGAME, R.N.P.'S**
**OBJECTION TO MAGISTRATE JUDGE'S ORDER DATED AUGUST 30, 2005**
**(re: Production of October 26th Notes)**

Now comes defendant Pamela Burlingame, RNP, and pursuant to Fed.R.Civ.P. 72(a) and Local Rule 32(b)(2) hereby objects to the Magistrate Order's hereby August 30, 2005. In support of this objection, the defendant relies upon the memorandum of law filed in support thereof.

PAMELA BURLINGAME, RNP
By her Attorneys,
MORRISON MAHONEY LLP

Mark T. Nugent, #2637
Paul V. Sullivan, #5712
121 South Main Street, Suite 600
Providence, RI 02903-7141
Tel: (401) 331-4660
Fax: (401) 351-4420

**CERTIFICATION**

I hereby certify that on this 12 day of September, 2005 a true copy of the foregoing was mailed, postage pre-paid to:

Counsel for Plaintiff
Amato A. DeLuca, Esq.
Miriam Weizenbaum, Esq.
DeLuca & Weizenbaum, Ltd.
199 North Main Street
Providence, RI 02903

Counsel for Co-Defendant Hospital
Paul F. Galamaga, Esq.
Ratcliffe, Burke Harten & Elias
1600 Financial Plaza
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LINDA WADENSTEN, individually and p.p.a. Maximus Wadensten
*Plaintiff*

vs. C.A. No.: 04-0326 S

SOUTH COUNTY HOSPITAL;
PAMELA BURLINGAME, RNP;
ROBERT J. CASCI, JR., DO;
TIMOTHY DRURY, MD;
RHODE ISLAND EMERGENCY PHYSICIANS, INC.;
JOHN DOE, Alias; JANE DOE, Alias;
and JOHN DOE CORPORATION, Alias
*Defendants*

**DEFENDANT PAMELA BURLINGAME, R.N.P.'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MAGISTRE JUDGE'S ORDER DATED AUGUST 30, 2005 (re: Production of October 26th Notes)**

Now comes defendant Pamela Burlingame, RNP ( "Burlingame") in the above-captioned action and pursuant to Fed.R.Civ.P. 72(a) and Local Rule 32(b)(2), hereby objects to the following parts of the Magistrate Judge's Order dated August 30, 2005 which compels the production of her personal notes dated October 26, 2003. (Order attached as Exhibit A):

1. Page 6, the first full paragraph, last sentence, wherein the Magistrate Judge states, "Plaintiff persuasively argues that defendant Burlingame herself characterized the October 26 note as a continuation or addendum to the medical record made only a few hours after the patient's transfer to Hasbro for emergency surgery."

2. Page 6, last full paragraph, continuing onto page 7, wherein the Magistrate Judge concludes that defendant Burlingame has failed to meet the "because of " test.

3. Page 7, last full paragraph, continuing onto page 8, wherein the Magistrate Judge states that the court ". . . agrees that it would be an incongruous result to order production of the nanny's October 26 notes but not defendant Burlingame's October 26 notes given the similar circumstances under which the two sets of notes were created."

Defendant Burlingame submits that the challenged parts of the order are not supported by the facts and contrary to law, and therefore the court should modify or set aside the order. A transcript of the hearing has been ordered. As grounds for this objection, defendant Burlingame states as follows:

**I. The Magistrate Judge's Order recognizes that when a claim is made that a document was prepared in "anticipation of litigation" that there are three fundamental concepts: litigation, anticipation, and causation. The Magistrate Judge further concludes that defendant Burlingame has met the first two concepts – litigation and anticipation – but that defendant Burlingame fails as "causation." This conclusion is clearly wrong and contrary to law in light of the nature of the document and the factual situation at that time.**

As the Court observed, the issue of "anticipation of litigation" involves three fundamental concepts: litigation, anticipation, and causation. In re Grand Jury Subpoena, 220 F.R.D. 130, 146 (D. Mass. 2004). A document is considered to be prepared in "anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared . . . because of the prospect of litigation." Maine v. U.S. Dep't of Interior, 298 F.3d 60, 68 (1st Cir. 2002) (emphasis in court's Order). The court then concluded that defendant Burlingame met the first two criteria, but not as to causation. For the reasons stated herein, this is a clearly not supported by the facts and is contrary to the law of the First Circuit.

As the court observed in the appealed August 30, 2005, Order, "[I]t was reasonable to assume as of the minor patient's transfer by helicopter to Hasbro for emergency surgery that future litigation was a real possibility." Magistrate order, p.7. At her deposition, defendant Burlingame explained that she created the notes because "at the very least" there is peer review and an internal risk management review of a sentinel event such as what occurred. She also specifically stated that the notes were prepared "ultimately in case there was litigation" (depo p.

236-237), which on its face satisfies the "because of" test adopted in this jurisdiction. As the Magistrate Judge observed in his Order,

> "It is self-evident that one of the primary functions of a Risk Manager is to anticipate and coordinate the defense of liability claims against a hospital including medical malpractice claims. Risk Managers also typically work closely with defense counsel in coordinating litigation avoidance and defense."

Order, p. 4. Defendant Burlingame knew when she created the October 26th note that future litigation was a real possibility, and that there would be an internal risk management investigation, as well as peer review. As defendant Burlingame stated at her deposition,

Q. The ones that you created for you, was that just so
you would remember the events of that day?
A. Yes.
. . . . . .
Q. Was there any other reason that you wrote those
notes other than to make sure you remembered?
A. Whenever there is an incident like this where
there is a complication from a prior visit,
especially a significant complication, **at the very
least there is a peer review of the case and an
internal investigation as far as the risk management
point of view where a sentinel event like this is
reviewed as a joint commission requirement.
So I knew that there was going to be
additional information that was going to be needed
by internal investigators, if not others.**
Q. So you wrote it in anticipation of the matter coming
under peer review?
A. Yes.
Q. The review of sentinel events, that as I understand
it, falls under peer review, is that correct?
A. I don't believe so. I think that they are
separate. **Review of sentinel events is probably
something that happens in the risk management
department under the direction of the risk
management.**
Peer review, as far as my understanding, is
something that is done by the medical staff director
or the director of the department with the immediate
supervisor of the person on the medical staff. So
peer review is a separate thing.

. . . . . .

Burlingame depo., pp. 9-11. (emphasis added). In preparing the notes for an internal risk management investigation, or internal investigators, "if not others", it was self-evident to Defendant Burlingame that the notes would be used to coordinate the defense of liability claims, including medical malpractice claims. Though defendant Burlingame does not issue the words "anticipation of litigation", she clearly was aware as the Magistrate Judge recognized in his August 30, 2005 Order that soon after Maximus Wadensten's transfer by helicopter to Hasbro, future litigation was a real possibility. Defendant Burlingame was concerned enough to sit down at 2:30 am, on her own time after her shift had ended, to write detailed notes which she never shared with anyone except her own attorney.

Further, the Magistrate Judge's interpretation of the case Maine v. U.S. Dep't of Interior, 298 F.3d 60 (1st Cir. 2002), overlooks the full scope of "causation" and is contrary to the law. We agree that a document is considered to be prepared in "anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared . . . because of the prospect of litigation." Maine v. U.S. Dep't of Interior, 298 F.3d at 68 (emphasis in court's Order). The Maine case, however, does not require that the note's sole reason for preparation be because of the prospect of litigation. Quoting extensively from the United States v. Adlman, 134 F.3d 1194 (2d Cir. 1998) case, the First Circuit Court of Apeals, in the Maine case, stated that "we therefore agree with the formulation of the work-product rule adopted in Adlman and by five other courts of appeals." Maine, 298 F.3d at 68. As discussed by the Adlman court,

> It is universally agreed that a document whose purpose is to assist in preparation for litigation is within the scope of the Rule and thus eligible to receive protection if the other conditions of protection prescribed by the Rule are met. The issue is less clear, however, as to documents which, although prepared because of expected litigation,



596868v1

> are intended to inform a business decision influenced by the prospects of the litigation. The formulation applied by some courts in determining whether documents are protected by work-product privilege is whether they are prepared "primarily or exclusively to assist in litigation" -- a formulation that would potentially exclude documents containing analysis of expected litigation, if their primary, ultimate, or exclusive purpose is to assist in making the business decision. Others ask whether the documents were prepared "because of" existing or expected litigation -- a formulation that would include such documents, despite the fact that their purpose is not to "assist in" litigation. ( emphasis added)

Adlman, 134 F.3d at 1197-98. The Adlman court then went on to reject the "primary" purpose standard; and First Circuit Court of Appeals agreed with that decision. Here, Defendant Burlingame created the notes because she was concerned about an internal Risk Management investigation (depo. p.10), peer review (depo. p.10), and "internal investigators, if not others." (depo. p.10). She also specifically testified that they were prepared "ultimately in case there was a litigation involved" (depo. P. 236-237) Even the Magistrate's Order concedes that future litigation was a real possibility before the note was drafted. The unusual events of that evening and Defendant Burlingame's knowledge that at a minimum there would be a risk management investigation to defend any malpractice action, make it clear that the subject notes were created because of the prospect of litigation. Simply because the notes might also serve some other purpose does not remove them from the realm of privileged work-product documents. As defendant Burlingame testified at her deposition,

> Q. I believe earlier you said that you prepared those,
> if I recall correctly, you prepared those for the
> purpose of peer review?
> [Objection]
> A. There were two different documents produced.
> The one that I produced the day of the incident was
> produced for my own recollection, to put it down
> while it was fresh in my mind in case of peer
> review, joint commission review, **ultimately in case**
> **there was a litigation involved**; but, primarily, for
> my own recollection to put down specifics that I
> didn't have an opportunity or space to document on

the record.
Q. So one of the reasons you prepared those notes was a concern about litigation?
[Objection]
A. Possibly.
Q. When you say possibly --
A. That was one of the possible things that might have happened. I didn't specifically prepare the document to submit in that case.

Burlingame. (depo., pp. 236-237) (emphasis added). Therefore, applying the standard set forth in the Aldman decision, namely that documents can be prepared "because of" litigation despite the fact that their purpose is not to "assist in" litigation, the October 26th notes are privileged as Burlingame's work product. As she said, she did not prepare the notes to "submit" them in this litigation. Defendant Burlingame created the October 26th note well aware of the prospect of litigation, and wanted to record further specifics so that if necessary, she could reference that note. There is no other logical reason for anyone to write out several pages of notes at 2:30am in the morning after a significantly eventful day.

**II. The Magistrate Judge's conclusion that the October 26th notes were part of the medical record is clearly contrary to the facts, as the October 26th notes were not shared with anyone, and were never added to the medical record by defendant Burlingame.**

The October 26th Burlingame notes were never intended to be an addendum to Maximus Wadensten's medical treatment records since she kept them private and never even mentioned them to Dr. Drury, the director of the ED, or anyone else at the hospital. As Defendant Burlingame testified at her deposition:

Q. Ms. Burlingame, what are on your notes that are not contained in the medical record?
A. Detail about when he -- well, not necessarily when he came in, but more detail about the physical exam, specifically more detail about the conversations that I had, the information that was given to me regarding the history and the mechanism;

> more detail regarding the discharge process and the discharge instructions that were given.
> That was further detailed in the specific document that I was asked to produce with the verbal discharge instructions on it.

Burlingame depo., pp. 237-238. The plaintiff's medical malpractice claim against Defendant Burlingame arises out of medical treatment that the defendant provided to Maximus Wadensten. Obviously, any notes that defendant Burlingame created will deal with the medical care and treatment that she provided for the plaintiff. Simply because the notes contain that type of information does not somehow in any way make those notes an extension of the medical records. That is only a description as to what they contain, not <u>why</u> they were created. Furthermore, defendant Burlingame did not attempt to place those notes in the medical record or add them to the medical record; instead she kept them for herself in anticipation of the risk management investigation, peer review, and ultimately litigation. The fact that these notes contain medical information does not make them official medical records, especially since they have never been made part of any medical records in the possession of the South County Hospital.

Finally, an in-camera review of these notes by the Court should reveal that there are details regarding the high potential for litigation which are specifically mentioned. This is clearly consistent with the "because of" standard established in the <u>Maine</u> and <u>Aldman</u> decisions. In fact, the information regarding hospital officers and the administration would <u>never</u> be included in any patient's chart. The same is true for the last page of the notes which contains information which may qualify as opinion work-product, and thus require a higher burden of proof to compel production. This mixture of fact and opinion work product should be evident after review of the notes of October 26th by the Court

**III. The Magistrate Judge's conclusion that "it would be an incongruous result to order production of the nanny's October 26th notes but not Defendant Burlingame's October 26 notes given the similar circumstances under which the two sets of notes were created" is clearly erroneous and contrary to law.**

The issue of Nanny Jen Weiss's notes can easily be distinguished from defendant Burlingame's October 26th note. Jen Weiss prepared those notes, and then at some later point voluntarily gave them to plaintiff's counsel, who were not her attorneys. While plaintiff's counsel had possession of those notes, defendants asked that they be produced, and the plaintiff claimed a privilege. However, there was no such privilege to assert as the notes had been shared with a third party. The key distinction is that Jen Weiss waived any potential claim of privilege by voluntarily distributing the notes to others, who were not her attorneys at that time. Defendant Burlingame, on the other hand, has never waived her privilege as to the confidentiality of said notes and only shared them with her counsel in this litigation.

**Conclusion**

For all the above stated reasons, Defendant Burlingame respectfully requests an Order of this Court modifying those parts of the Magistrate Judge's Order granting the plaintiff's motion to compel production of the October 26th notes.

PAMELA BURLINGAME, RNP
By her Attorneys,
MORRISON MAHONEY LLP

Mark T. Nugent, #2637
Paul V. Sullivan, #5712
121 South Main Street, Suite 600
Providence, RI 02903-7141
Tel: (401) 331-4660
Fax: (401) 351-4420

**CERTIFICATION**

I hereby certify that on this 12 day of September, 2005 a true copy of the foregoing was mailed, postage pre-paid to:

Counsel for Plaintiff
Amato A. DeLuca, Esq.
Miriam Weizenbaum, Esq.
DeLuca & Weizenbaum, Ltd.
199 North Main Street
Providence, RI 02903

Counsel for Co-Defendant Hospital
Paul F. Galamaga, Esq.
Ratcliffe, Burke Harten & Elias
1600 Financial Plaza
Providence, RI 02903



596868v1