**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LINDA WADENSTEN, Individually and p.p.a. MAXIMUS WADENSTEN** **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 04-326S** |
| **SOUTH COUNTY HOSPITAL; PAMELA BURLINGAME, RNP; ROBERT J. CASCI, JR., D.O.; TIMOTHY DRURY, M.D. JOHN DOE, ALIAS; JANE DOE, ALIAS; JOHN DOE CORPORATION, ALIAS** **Defendants.** | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT, PAMELA BURLINGAME'S, OBJECTION TO MAGISTRATE JUDGE'S ORDER DATED AUGUST 30, 2005**

Now comes the plaintiff, Linda Wadensten, and files this response to defendant Burlingame's objection to Magistrate Judge Almond's Order dated August 30, 2005 which compels the production of notes recorded by defendant Pamela Burlingame, R.N.P. while on duty as a nurse practitioner at South County Hospital on October 26, 2003.

## I. This Court lacks jurisdiction to consider defendant, Pamela Burlingame, R.N.P.'s objection to the Magistrate Judge's Order, as it is untimely under Federal Rule of Civil Procedure 72(a)

The Magistrate Judge's Order was served upon defendant Burlingame on August 30, 2005.[1] Since the Magistrate Judge's Order was non-dispositive, the Magistrate's Order was effective when made, and it was, therefore, immediately appealable to the District Court. *See* 28 U.S.C. §636(b)(1)(A). To obtain review of the Order, a party must file an objection within ten days from service of a copy of the Order. *See* Fed. R. Civ. P. 72(a). Unless an objection is

[1] A copy of the Magistrate Judge's Order is attached to defendant Nurse Practitioner Burlingame's Objection with a date stamp of August 30, 2005.

filed within the ten days as provided by the Rule, a Magistrate's Order on a non-dispositive matter, such as a self-operating order granting, denying or limiting pre-trial discovery, is not, thereafter, reviewable on appeal. *See Sunview Condominium Assoc. vs. Flexel International, Ltd.* 116 F.3d 962 965 (1st Cir. 1999); *Pagano vs. Franks*, 983 F.2d 343, 346 (1st Cir. 1999). Rule 72(a) is clear on this point.

"Within ten days after being served with a copy of the Magistrate Judge's Order, a party may serve and file objections to the Order; a party may not, thereafter, assign as error a defect in the Magistrate Judge's Order to which objection was not timely made." *See* Fed. R. Civ. P. 72(a). *See also* 28 U.S.C. § 636(b)(1)(A).

In the instant case, defendant Burlingame received the Magistrate Judge's Order on August 30, 2005. The defendant did not file her objection to the Order until September 12, 2005, well after the ten-day appeal period.

Based on the foregoing, this Court is without jurisdiction to entertain defendant Nurse Practitioner Burlingame's objection to the Magistrate Judge's Order and it must, therefore, be dismissed.

## II. The Court must uphold the Magistrate Judge's Order dated August 30, 2005 compelling the production of Pamela Burlingame, R.N.P.'s notes.

This Court, in considering the defendant's objection to the Magistrate Judge's Order of August 30, 2005, may modify or set aside the Order only if the Magistrate Judge's Order is found "to be clearly erroneous or contrary to law." Plaintiff submits that the challenged parts of the Order are not clearly erroneous or contrary to law, and this Court ought not modify or set them aside. *Anthony vs. Abbott Laboratories*, 106 F.R.D. 461 (D. RI 1985).

As this Court is aware, the Court must refrain from "second-guess[ing] the Magistrate on his pre-trial discovery rulings." *Anthony vs. Abbott Laboratories I.D.C.* 463. Indeed, this Court must search the record to determine whether "it has a definite and firm

conviction that the [Magistrate] committed a clear error of judgment in the conclusion [he] reached upon a weighing of the relevant factors." *In re Josephson*, 218 F.2d 182 (1st Cir. 1954).

The defendant's lament is that the notes prepared by Pamela Burlingame, R.N.P. at South County Hospital on October 26, 2003 concerning the care and treatment of Maximus Wadensten were made in anticipation of litigation and, therefore, are not discoverable by the plaintiff (*see* defendant's memo, Page 2).

**Burden of Proof**

The party invoking a recognized privilege has the burden of establishing not only the existence of that privilege, but also that the privilege was not waived. *See United States vs. Wilson*, 798 F.2d 509, 512-13 (1st Cir. 1986); *Von Bulow vs. Von Bulow*, 811 F.2d 136, 144 (2nd Cir. 1987). ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.") *See also FDIC vs. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000).

**Work-Product Doctrine**

The work-product doctrine protects "the files and mental impressions of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. *U.S.C. vs. Randall*, 194 F.R.D. 369, 373 (D. Mass 1999) citing *Hickman vs. Taylor*, 329 U.S. 495, 510-511 (1947); *United States vs. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998).

A document is considered to have been prepared "in anticipation of litigation" and within the scope of Rule 26 if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *Maine vs. U.S. Dep't of Interior*, 298 F.3d 60, 69

(1st Cir. 2002) (emphasis in original). The Magistrate found in applying the "because of" factor, that defendant Burlingame had not met her burden of establishing attorney work-product protection (Magistrate Judge's Order, Page 6). More particularly, the Magistrate found:

> "Although Defendant Burlingame mentions the possibility of litigation in her deposition testimony, and in the October 26 note, it is never asserted as the reason why she created the October 26 note. The reference to litigation in the October 26 note is made in connection with efforts to safeguard the medical record and not as the reason for preparing the note. The balance is ultimately tilted in favor of the Plaintiff based on Defendant Burlingame's testimony. She states that the October 26 note was produced "for [her] own recollection" and significantly that it was "primarily, for my own recollection to put down specifics that I didn't have an opportunity or space to document on the record." Burlingame Dep. at pp. 236-37. It logically follows from Defendant Burlingame's testimony that if she did have the "opportunity or space" to document those specifics in the "record," she would have done so -- a medical record which is, of course, fully discoverable in a case such as this."

The defendant argues that these findings of fact by the Magistrate are contrary to the "factual situation" and the law. Specifically, the defendant asserts that in defendant Burlingame's deposition, she stated that the notes were prepared in case there was litigation (*see* Burlingame Dep. at pp 237). This, the defendant suggests, satisfies the "because of" test.

Assuming, arguendo, that one of defendant Burlingame's purposes for preparing the notes was in consideration of litigation, the "because of" standard does not protect from disclosure "documents that would have been created in essentially similar form irrespective of the litigation." *Adlman*, 134 F.2d 1202 citing Fed. R. Civ. P. 26(b)(3). This is the case even if the documents aid in the preparation of litigation. Id.

Pamela Burlingame, R.N.P. testified to her reason for creating her notes. She states that the October 26 note was created "for [her] own recollection" and

"primarily for my own recollection to put down specifics that I didn't have an opportunity or space to document on the record." *see* Burlingame Dep. at pp 236-37.

Further, defendant Burlingame also explicitly states that when she created the notes, she considered litigation as only "one of the possible things that might have happened," but stressed that she "didn't specifically prepare" her notes out of concern for litigation. (*see* Burlingame Dep. at pp 237). Pamela Burlingame, R.N.P.'s notes were not created "in anticipation of litigation." *See In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D. Mass. 2004).

Counsel cannot credibly maintain that notes defendant Burlingame herself acknowledges were not prepared in anticipation of litigation are nevertheless protected from disclosure by the work-product doctrine or the attorney client privilege. Thus, this Court has no reason not to conclude that the Magistrate Judge correctly held that the October 26 notes by Pamela Burlingame, R.N.P. are discoverable since a privilege does not apply and because the document, as a medical record, is in no way privileged and falls squarely within the scope of discovery pursuant to Rule 26.

## CONCLUSION

For all of the above stated reasons, defendant Burlingame's request for an Order of this Court modifying the Magistrate Judge's Order of August 30, 2005, should be denied.

Plaintiff,
By her Attorneys,

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

## CERTIFICATION

I hereby certify that a true and accurate copy of the within was served on counsel of record listed below on this 23rd day of September 2005 by 1st class mail:

Paul F. Galamaga, Esq.
Jay M. Elias, Esq.
Ratcliffe, Burke, Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

Mark T. Nugent, Esq.
Paul V. Sullivan, Esq.
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

AUG 30 2005
By

LINDA WADENSTEN :
:
v. : C.A. No. 04-326S
:
SOUTH COUNTY HOSPITAL, :
et al. :

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff's Motion to Compel Production of (1) Medical Literature and (2) Notes of Defendant Pamela Burlingame, RNP. (Document No. 210). Defendant Burlingame objects to Plaintiff's Motion. (Document No. 220). This Motion has been referred to me for determination. 28 U.S.C. § 636(b)(1)(A); Local R. 32(b). A hearing was held on August 25, 2005. For the reasons discussed below, Plaintiff's Motion is GRANTED in part and DENIED in part.

**Background**

Defendant Burlingame was deposed on May 20, 2005. During her deposition, she testified that she reviewed two medical texts after the October 25, 2003 incident which forms the basis for this litigation. Defendant Burlingame testified that she retrieved the two texts herself "to clarify [her] mind what actually had become the final diagnosis in the emergency room and to sort of see if there was anything that I might have done differently or wasn't aware of." Burlingame Dep. at pp. 19-21. Defendant Burlingame also testified regarding two sets of notes (one dated October 26 and the other October 28) she created after the October 25 incident. She indicated that she believed she had referenced these notes in preparing her answers to Plaintiff's interrogatories "to refresh [her] recollection as to the incident." Id. at 17. She further stated that she reviewed the interrogatory

answers in preparing for her deposition testimony. Id. at 19. The existence of the notes was disclosed to Plaintiff prior to Defendant Burlingame's deposition in a supplement interrogatory answer. Id. at 236.

Both sets of notes have been submitted to the Court for in camera review. Defendant Burlingame testified that the October 26 notes were:

> produced for [her] own recollection, to put it down while it was fresh in [her] mind in case of peer review, joint commission review, ultimately in case there was a litigation involved; but, primarily, for [her] own recollection to put down specifics that I didn't have an opportunity or space to document on the record."

Burlingame Dep. at pp. 236-37 (emphasis added). The October 28 note deals only with the verbal discharge instructions given to the mother and nanny by Defendant Burlingame at the time of the minor patient's discharge after his first Emergency Room visit on October 25. The October 28 note was created by Defendant Burlingame at the request of the Risk Manager for Defendant South County Hospital.

**Discussion**

**A. Medical Literature**

This portion of the dispute can only be characterized as silly. Defendant Burlingame identified the two medical texts in question at her deposition, and, more specifically, in response to Plaintiff's Request for Production. Plaintiff's counsel indicated an unwillingness to purchase these texts and to speculate as to the portions reviewed by Defendant Burlingame. Defendant Burlingame's counsel expressed concern about the burden of copying the texts – one of which is 450 pages in length.

Defendant Burlingame has also asserted the attorney-client privilege and attorney work-product doctrine as protecting these texts from disclosure. Defendant Burlingame, however, completely failed to meet her burden of establishing that either of these texts are privileged from disclosure. First, Defendant Burlingame has identified the texts at her deposition and in discovery responses and thus has waived any possible privilege as to the identity of the texts. Second, as to attorney-client privilege, reading these texts can in no way be characterized as a confidential communication between Defendant Burlingame and her attorney. Finally, as to work-product, Defendant Burlingame did not review the texts with – or at the direction of – counsel, or in anticipation of litigation. As noted above, Defendant Burlingame testified at her deposition that she retrieved the texts on her own initiative to seek clarification after the events of October 25. Burlingame Dep. at pp. 20-21.

Plaintiff's Motion to Compel as to the medical texts is GRANTED. Defendant Burlingame's counsel shall either provide copies to Plaintiff's counsel of the portions of the texts Defendant Burlingame reviewed after the incident or, alternatively, make the texts available for review and copying by Plaintiff's counsel with identification of the portions so reviewed.

**B. The October 26 and 28 Notes**

Defendant Burlingame contends that these two sets of notes are "clearly protected under the attorney-client privilege and as attorney work product." Plaintiff contends that Defendant Burlingame has not met her burden of establishing the existence of either privilege and, even if a privilege applied, Plaintiff argues that it was waived because she relied upon the notes, at least

indirectly, in preparing for her deposition.[1] Finally, the parties dispute the extent to which, if any, the notes were prepared in anticipation of litigation.

Defendant Burlingame does not dispute that she, as the party asserting a privilege, bears the burden of establishing that the attorney-client privilege and/or the attorney work-product doctrine applies. See, e.g., FDIC v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000).

First, as to the October 28 note, it is undisputed that the note was not prepared by Defendant Burlingame on her own initiative. It was prepared nearly three full days after the incident and done so at the request of the Hospital's Risk Manager. This Court has reviewed the one-page October 28 note, and it simply outlines the verbal discharge instructions given by Defendant Burlingame to the mother and nanny on October 25. All three of these individuals have been deposed and questioned about these instructions.

Defendant Burlingame testified at her deposition that the Risk Manager asked her to document the verbal discharge instructions. Burlingame Dep. at p. 11. She further testified that she believed that the reason was "they wanted to have a complete understanding of the written and the verbal instructions" given to the mother at the time of discharge. Id. at 11-12. It is self-evident that one of the primary functions of a Risk Manager is to anticipate and coordinate the defense of liability claims against a hospital including medical malpractice claims. Risk Managers also typically work closely with defense counsel in coordinating litigation avoidance and defense. It is also reasonable

[1] As Defendant Burlingame did not directly review the notes in preparation for her deposition, and there is no indication that any reference to the notes was necessary to refresh her memory for purposes of testifying at the deposition, this Court finds that Plaintiff has not met her burden of establishing any waiver of either the attorney-client privilege or work-product protection, if applicable.

to conclude that the potential for litigation was plainly on everyone's radar screen based on the unfortunate outcome of the October 25 injury and Emergency Room visit.

Even if counsel had not yet been retained regarding the October 25 incident, the Hospital's Risk Manager had a reasonable basis to anticipate litigation, and her request that Defendant Burlingame document her recollection of the verbal discharge instructions was done in anticipation of such litigation. Thus, the October 28 note is protected from disclosure by the attorney work-product doctrine. Plaintiff has not attempted to – and, in any event, could not – make a showing of "substantial need" to overcome the work-product protection. See Rule 26(b)(3), Fed. R. Civ. P. Defendant Burlingame, the mother and nanny have all been deposed regarding the subject of the October 28 note which constitutes a substantially equivalent source of the information available to Plaintiff. Id.

Second, as to the October 26 note, it presents a much closer question. The October 26 note indicates that it was prepared at 2:30 a.m. This was shortly after Defendant Burlingame completed her shift in the Emergency Room for that night and, at a time when the events of October 25 should have been vivid in her mind. The October 26 note was prepared less than ten hours after the minor patient's first Emergency Room visit and shortly after his transfer to and emergency surgery at the Hasbro Children's Hospital.

The applicability of either privilege to the October 26 note is guided by the purpose Defendant Burlingame had in mind at the time she drafted the note. The only evidence before this Court on that issue are excerpts from Defendant Burlingame's deposition testimony. It is undisputed that Defendant Burlingame was not represented by counsel regarding this matter at the time she prepared the October 26 note, and she did not indicate at her deposition that the note was intended

to be a communication to her attorney for the purpose of seeking future legal advice or assistance. The October 26 note is not addressed to counsel and does not seek any legal advice or assistance. Rather, it provides a nearly contemporaneous narrative report of the events of October 25 and early October 26. Defendant Burlingame has not met her burden of establishing that the October 26 note is protected by the attorney-client privilege.

As to the attorney work-product doctrine, the October 26 note, unlike the October 28 note, was not prepared at the request of counsel or counsel's agent. In her own words, Defendant Burlingame testified that she prepared the October 26 note "for [her] own recollection." Burlingame Dep. at p. 236. She also said it was to document "specifics" that she "didn't have an opportunity or space to document on the record." Id. at 236-37. Plaintiff persuasively argues that Defendant Burlingame herself characterized the October 26 note as a continuation or addendum to the medical record made only a few hours after the patient's transfer to Hasbro for emergency surgery.

In the First Circuit, a document is considered to have been prepared "in anticipation of litigation" if:

> in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared...because of the prospect of litigation.

Maine v. U.S. Dep't of Interior, 298 F.3d 60, 69 (1st Cir. 2002) (emphasis in original). In adopting this "because of" rule, the First Circuit rejected a more stringent "primary motivating factor" test. Id. at 67. Even applying the less stringent "because of" test, this Court finds that Defendant Burlingame has not met her burden of establishing attorney work-product protection. The issue of "anticipation of litigation" involves three fundamental concepts: litigation, anticipation and causation. In re Grand Jury Subpoena, 220 F.R.D. 130, 146 (D. Mass. 2004). Defendant Burlingame

clears the litigation and anticipation hurdles but stumbles as to causation. As noted above, it was reasonable to assume as of the minor patient's transfer by helicopter to Hasbro for emergency surgery that future litigation was a real possibility. The issue of causation directly implicates the First Circuit's "because of" test. In other words, the issue is whether Defendant Burlingame prepared the October 26 note because of this realistic potential for future litigation.

Although Defendant Burlingame mentions the possibility of litigation in her deposition testimony, and in the October 26 note, it is never asserted as the reason why she created the October 26 note. The reference to litigation in the October 26 note is made in connection with efforts to safeguard the medical record and not as the reason for preparing the note. The balance is ultimately tilted in favor of Plaintiff based on Defendant Burlingame's testimony. She states that the October 26 note was produced "for [her] own recollection" and significantly that it was "primarily, for my own recollection to put down specifics that I didn't have an opportunity or space to document on the record." Burlingame Dep. at pp. 236-37. It logically follows from Defendant Burlingame's testimony that if she did have the "opportunity or space" to document those specifics in the "record," she would have done so – a medical record which is, of course, fully discoverable in a case such as this.

Finally, Plaintiff points out that this Court previously overruled similar privilege claims and ordered, over Plaintiff's objection, the production of notes of the events of October 25 prepared by the nanny on October 26. See Order dated July 28, 2005 (Document No. 213). As with Defendant Burlingame's October 26 notes, the nanny's notes were prepared shortly after the events of October 25. The nanny was not represented by counsel at the time she prepared the notes and thus they were not prepared at the direction of counsel or to seek advice or assistance from counsel. This Court

agrees that it would be an incongruous result to order production of the nanny's October 26 notes but not Defendant Burlingame's October 26 notes given the similar circumstances under which the two sets of notes were created.

**Conclusion**

For the reasons discussed above, Plaintiff's Motion to Compel (Document No. 210) is GRANTED as to the medical texts, DENIED as to the October 28 note and GRANTED as to the October 26 note. Defendant Burlingame shall comply with this ORDER within fourteen (14) days.

LINCOLN D. ALMOND
United States Magistrate Judge
August 30, 2005

your knowledge base and expanding your ability to provide other services.
Q. Were you splinting fractures before you went to that course?
A. Yes.
Q. Were you doing that on occasion without a doctor coming to look at the splint; in other words, without direct physician supervision?
A. In some circumstances, yes. Minor fractures.
MS. WEIZENBAUM: Why don't we go off the record.
VIDEOGRAPHER: The time is 5:20 p.m. Going off the record.
(Off the record)
VIDEOGRAPHER: The time is 5:28. We are back on the record.
MS. WEIZENBAUM: I have no further questions.
EXAMINATION
BY MR. GALAMAGA:
Q. Ms. Burlingame, my name is Paul Galamaga and I represent South County Hospital. I just have a few questions for you. The patient in this case, the patient's name is Maximus Wadensten, is that correct?



A. Yes.
Q. The presentation of this patient, to your understanding, was a patient who had a bump on his head?
A. Yes.
MS. WEIZENBAUM: I am going to object. Paul, you are not allowed to ask leading questions.
MR. GALAMAGA: Well, is that a question -- is there really any dispute that it was a patient with a bump on the head?
MS. WEIZENBAUM: I am just saying.
Q. In the year 2003, was it the practice of South County Hospital that patients presenting with a bump on the head could be treated by you as a nurse practitioner?
MS. WEIZENBAUM: Objection.
A. Yes.
Q. What was your diagnosis of Maximus before discharge?
A. Minor head injury.
Q. In the year 2003, was it the practice of South County Hospital that patients that were diagnosed with a minor head injury could be treated and discharged by you as a nurse practitioner?
MS. WEIZENBAUM: Objection.
A. Yes.



Q. Based upon your clinical judgment at the time you treated Maximus Wadensten, do you believe that you performed an appropriate examination that allowed you to treat -- manage, treat and discharge the patient?
MS. WEIZENBAUM: Objection.
A. I believe so.
Q. You talked earlier about some notes you had prepared; do you recall that?
A. Yes.
Q. And those were notes, I think, that were identified in your answers to interrogatories?
A. The supplemental answers, yes.
Q. I believe earlier you said that you prepared those, if I recall correctly, you prepared those for the purpose of peer review?
MS. WEIZENBAUM: Objection.
A. There were two different documents produced. The one that I produced the day of the incident was produced for my own recollection, to put it down while it was fresh in my mind in case of peer review, joint commission review, ultimately in case there was a litigation involved; but, primarily, for my own recollection to put down specifics that I didn't have an opportunity or space to document on



the record.
Q. So one of the reasons you prepared those notes was a concern about litigation?
MS. WEIZENBAUM: Objection.
A. Possibly.
Q. When you say possibly --
A. That was one of the possible things that might have happened. I didn't specifically prepare the document to submit in that case.
MR. GALAMAGA: I have no further questions. Thank you.
MR. NUGENT: I have no questions.
FURTHER EXAMINATION
BY MS. WEIZENBAUM:
Q. Ms. Burlingame, what are on your notes that are not contained in the medical record?
A. Detail about when he -- well, not necessarily when he came in, but more detail about the physical exam, specifically more detail about the conversations that I had, the information that was given to me regarding the history and the mechanism; more detail regarding the discharge process and the discharge instructions that were given.
That was further detailed in the specific document that I was asked to produce with the verbal