**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LINDA WADENSTEN, Individually and** | : | |
| **p.p.a. MAXIMUS WADENSTEN** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **C.A. NO. 04-326S** |
| | : | |
| **SOUTH COUNTY HOSPITAL;** | : | |
| **PAMELA BURLINGAME, RNP;** | : | |
| **TIMOTHY DRURY, M.D.,** | : | |
| **RHODE ISLAND EMERGENCY** | : | |
| **PHYSICIANS, INC.;** | : | |
| **JOHN DOE, ALIAS; JANE DOE, ALIAS;** | : | |
| **JOHN DOE CORPORATION, ALIAS** | : | |
| **Defendants** | : | |

**STATEMENT OF UNDISPUTED FACTS**

**IN SUPPORT OF**
**DEFENDANT SOUTH COUNTY HOSPITAL'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [EMTALA]**

Now comes defendant South County Hospital [hereinafter sometimes referred to as the "Hospital"] and, pursuant to U.S. District Court Local Rule LR Cv 56, herein submits this "Statement of Undisputed Facts" in support of its Motion for Summary Judgment as to all of plaintiff Linda Wadensten's claims of EMTALA violations against the Hospital.

**Defendant South County Hospital submits that the following facts are undisputed:**

1. Defendant South County Hospital is a not-for-profit healthcare facility licensed by the State of Rhode Island and located in Wakefield, Rhode Island. [Answer of South County Hospital]

2. Defendant South County Hospital is a Medicare participating hospital subject to the provisions of the Emergency Medical Treatment and Active Labor Act [EMTALA], *42 U.S.C. § 1395dd, et seq.* [Answer of South County Hospital and Supplemental Answers to Interrogatories of South County Hospital]

3. Defendant Rhode Island Emergency Physicians, Inc. is a corporation existing under the laws of the State of Rhode Island with a principal place of business within the State of Rhode Island. [Answer of Rhode Island Emergency Physicians, Inc.]

4. Defendant Pamela Burlingame, R.N.P. is a citizen and resident of the State of Rhode Island. [Answer of Pamela Burlingame, R.N.P.]

5. Defendant Pamela Burlingame, R.N.P. was at all times mentioned in the plaintiff's complaints licensed by the State of Rhode Island as a Registered Nurse Practitioner. [Answer of Pamela Burlingame, R.N.P.]

6. Defendant Pamela Burlingame, R.N.P. was at all times mentioned in the plaintiff's complaints employed by Defendant Rhode Island Emergency Physicians, Inc. [Answer of Pamela Burlingame, R.N.P. and Answers to Interrogatories of Pamela Burlingame, R.N.P.]

7. Defendant Pamela Burlingame, R.N.P. was at all times mentioned in the plaintiff's complaints a member of the Medical Staff of South County Hospital, holding privileges as a Registered Nurse Practitioner. [Answers to Interrogatories of Pamela Burlingame, R.N.P.]

8. Plaintiff Linda Wadensten, is a citizen and resident of the State of Rhode Island. [Second Amended Complaint ]

9. Plaintiff Linda Wadensten is the mother and natural guardian of the minor plaintiff, Maximus Wadensten. [Second Amended Complaint]

10. Plaintiff Maximus Wadensten has a date of birth of March 8, 2003. [South County Hospital Emergency Department Record or Plaintiff's Answers to Interrogatories]

11. On or about August 6, 2004, plaintiff Linda Wadensten filed a Complaint in the United States District Court for the District of Rhode Island against Defendant South County Hospital, and others, alleging the jurisdiction of this Court pursuant to 28 U.S.C. §1331. [Complaint]

12. On or about September 18, 2004, plaintiff Linda Wadensten filed her Amended Complaint in the United States District Court for the District of Rhode Island. [Amended Complaint]

13. On or about December 15, 2004, plaintiff Linda Wadensten filed her Second Amended Complaint in the United States District Court for the District of Rhode Island. [Second Amended Complaint]

14. Plaintiff Linda Wadensten's complaint alleged, among other things, negligence, lack of informed consent, *res ipsa loquitor*, corporate liability, vicarious liability, and claims of liability pursuant to EMTALA [*42 U.S.C. § 1395dd et seq.*] on the part of defendant South County Hospital in connection with care and treatment rendered to the minor plaintiff, Maximus Wadensten, on October 25, 2003. [Second Amended Complaint]

15. On October 25, 2003, plaintiff Maximus Wadensten was dropped onto the kitchen floor of his home by his babysitter, Jennifer Weiss. [South County Hospital Emergency Department Record and Jennifer Weiss Deposition Transcript, Part 2 at Pages 37-42]

16. Jennifer Weiss has admitted "instinctually" dropping plaintiff Maximus Wadensten onto the kitchen floor of his home after taking him out of his stroller. [Jennifer Weiss' Deposition Transcript Part 2 at Page 40]

17. Jennifer Weiss has admitted that the child fell first onto his diapered buttocks and then onto his head. [Jennifer Weiss' Deposition Transcript Part 2 at Pages 41-42]

18. Jennifer Weiss admitted at deposition that she believed she was careless in dropping the baby. [Jennifer Weiss' Deposition Transcript Part 1 at Pages 226-229]

19. Jennifer Weiss testified that plaintiff Maximus Wadensten cried immediately after falling onto the floor. [Jennifer Weiss' Deposition Transcript Part 1, Page 102]

20. Jennifer Weiss testified that, while in her presence, at no time did plaintiff Maximus Wadensten lose consciousness. [Jennifer Weiss' Deposition Transcript Part 1, Page 104]

21. After Maximus Wadensten fell onto the kitchen floor, it was agreed by and between Jennifer Weiss and plaintiff Linda Wadensten that Ms. Weiss would take Maximus Wadensten to defendant South County Hospital for evaluation, and that Ms. Wadensten would meet them at the Hospital. [Jennifer Weiss' Deposition Transcript Part 1, Pages 103 and 104; and Linda Wadensten Answers to Interrogatories and Jennifer Weiss' handwritten notes]

22. Jennifer Weiss is not a party to this lawsuit. [Second Amended Complaint]

23. Plaintiff Maximus Wadensten arrived at the emergency department of defendant South County Hospital at approximately 1544 hours [3:44 p.m.]. [South County Hospital

Emergency Department Record]

24. The reason for the visit as stated in the emergency department record was for a "fall sustaining a bump on head". [South County Hospital Emergency Department Record]\

25. Plaintiff Maximus Wadensten was initially seen in the emergency department at defendant South County Hospital by Pamela Burlingame, R.N.P at approximately 1600 hours [4:00 p.m.]. [South County Hospital Emergency Department Record]

26. Both plaintiff Linda Wadensten and Jennifer Weiss were present during the initial examination and evaluation by Pamela Burlingame, R.N.P. on October 25, 2003. [South County Hospital Emergency Department Record]

27. Defendant Pamela Burlingame, R.N.P. testified at deposition that she completed a "head-to-toe physical exam" of Maximus Wadensten. [Pamela Burlingame, R.N.P. Deposition Transcript at Page 118]

28. Jennifer Weiss testified at deposition that she was present during the examinations of Maximus Wadensten on October 25, 2003 in the emergency department of defendant South County Hospital. [Jennifer Weiss Deposition Transcript at Page 128-129]

29. Plaintiff Linda Wadensten testified at deposition that she was present during the examinations of Maximus Wadensten on October 25, 2003 in the emergency department of defendant South County Hospital. [Linda Wadensten Deposition Transcript at Page 59-63]

30. Defendant Pamela Burlingame, R.N.P. testified at deposition that she could perform that physical examination of Maximus Wadensten without a physician present. [Pamela Burlingame, R.N.P. Deposition Transcript at Page 119]

31. Defendant Pamela Burlingame, R.N.P. testified at deposition that she could perform that physical examination of Maximus Wadensten without having to consult a physician or bring a physician in to the examining room, based upon her judgment. [Pamela Burlingame, R.N.P. Deposition Transcript at Page 119]

32. Defendant Pamela Burlingame, R.N.P. testified at deposition that with a patient who has a head injury and for whom she is trying to rule out a major head injury, she evaluates breathing to see if it is irregular, mental status to see it if is abnormal, pupils to see if they are irregular, determines whether there is blood behind the eardrums, bruising at the base of the skull, a penetrating wound or a laceration, and she checks circulatory stability, capillary refill, and pulse. [Pamela Burlingame, R.N.P. Deposition Transcript at Pages 119-120]

33. Defendant Pamela Burlingame, R.N.P. testified at deposition that she was told by Jennifer Weiss, the child's babysitter, that she was lifting Maximus out of a stroller and the dog

bumped into her and she dropped the child, and indicated that the child landed on to his bottom and fallen back and hit the back of his head. [Pamela Burlingame, R.N.P. Deposition Transcript at Page 141]

34. A South County Hospital "Emergency Physician Record Pediatric Injury" form was completed by Pamela Burlingame, R.N.P. for the initial emergency department visit of Maximus Wadensten on October 25, 2003. [South County Hospital Emergency Department Record]

35. That medical record was signed by Pamela Burlingame, R.N.P. and countersigned by defendant Timothy Drury, M.D. [South County Hospital Emergency Department Record]

36. That medical record indicates that plaintiff Maximus Wadensten was seen at 1600 hours in defendant South County Hospital's emergency department room A-4. [South County Hospital Emergency Department Record]

37. That medical record indicates that the "Historian" was the child's "mom & nanny", and they provided the following information to Pamela Burlingame, R.N.P.:

a. The child's injury occurred "just PTA" or just prior to admission;

b. The location of the injury was at the child's home;

c. The "mechanism of injury" was stated as "picking up baby out of stroller, dog bumped into nanny & baby was dropped 1-2 feet onto the floor, struck head & back";

d. The area of pain/discomfort was noted to be the child's head;

e. Maximus was reported to have cried immediately after the fall;

f. Maximus was reported not to have lost consciousness [LOC];

g. Maximus was reported not to have experienced any decreased loss of consciousness [LOC] since the injury;

h. Review of Symptoms [ROS] were reported to be negative;

i. The child's caretaker was noted to be "mom/nanny";

j. "Past History" was noted to be negative;

k. There were noted to be no known drug allergies [NKDA];

l. Nurse's note was reviewed;

m. Immunizations were noted to be current; and

n. Vital signs were noted. [South County Hospital Emergency Department Record]

38. The medical records of defendant South County Hospital, in particular, the "Emergency Physician Record Pediatric Injury" form for Maximus Wadensten's initial visit on October 25, 2003, completed by Pamela Burlingame, R.N.P., indicates that Pamela Burlingame, R.N.P. performed the following Physical Examination of Maximus Wadesten:

a. A general examination which revealed the child was in no acute distress and was active;

b. The child was noted have attentiveness normal for his age, smiling, with good eye contact;

c. He was considered to have normal consolability;

d. An examination of the child's head revealed no Battle's Sign or Raccoon Eyes;

e. Maximus was noted by diagram to have a bump on the right lower posterior area of his head;

f. His neck was noted to be non-tender, with painless range of motion [ROM], and with normal trachea and thyroid;

g. An examination of the child's eyes revealed that the child's pupils were equal, responsive and reactive to light [PERRL] with extraoccular movement intact [EOMI], and lids and conjunctiva noted to be normal;

h. An examination of the ENT [Ears, Nose and Throat] revealed a normal external inspection and a normal pharynx;

i. A neurological examination revealed no apparent motor or sensory deficits, and cranial nerves [CN's] were considered to be normal as tested;

j. The child's respiratory system was evaluated and it was determined that there was no respiratory distress, breath sounds were considered normal, and his chest was non-tender;

k. An examination of the cerebral-vascular system [CVS] was conducted and revealed normal heart sounds and strong peripheral pulses;

l. The child's abdomen was examined and found to be non-tender with no organomegaly;

m. An examination of the back revealed it was non-tender;

n. The child's skin was examined and found to be normal in color, warm, dry, and intact;

o. Extremities were examined and it was noted that the pelvis was stable and his hips were non-tender. [South County Hospital Emergency Department Record]

39. Plaintiff Linda Wadensten testified at deposition that Defendant Pamela Burlingame, R.N.P. felt the bump on the child's head, looked in Maximus's ears with a device, and listened to his chest with a stethoscope. [Linda Wadensten's Deposition Transcript at Pages 59-65].

40. Jennifer Weiss testified at deposition that Defendant Pamela Burlingame, R.N.P. said she was going to examine Maximus, did in fact examine Maximus in her presence and in the presence of plaintiff Linda Wadensten, listened to the child's heart with a stethoscope, examined the child's ears with a device, and felt the child's head. [Jennifer Weiss Deposition Transcript at Pages 128-133]

41. The emergency department record of the initial visit of October 25, 2003 indicates that Pamela Burlingame, R.N.P discussed surveillance with the child's mom and nanny, the need to return if there were any changes in the child's condition, and that there was no evidence of other injury seen, old or new. [South County Hospital Emergency Department Record]

42. The medical record of defendant South County Hospital indicates that Defendant Pamela Burlingame, R.N.P.'s Clinical Impression following her examination of Maximus Wadensten was of a contusion of the head and a "minor head injury". [South County Hospital Emergency Department Record]

43. The record of the initial visit on October 25, 2003 indicates a disposition to home for Maximus Wadensten in stable condition. [South County Hospital Emergency Department Record]

44. The record of the initial visit of October 25, 2003 indicates that written discharge instructions were provided to plaintiff Linda Wadensten, specifically for "Head Injury - Wake Up", Lauren Noel, M.D., Call private physician for follow up". [South County Hospital Emergency Department Record]

45. Plaintiff Linda Wadensten's signature appears on the South County Hospital Emergency Department Discharge Instructions for the visit of October 25, 2003. [South County Hospital Emergency Department Record]

46. There is no allegation by plaintiff Linda Wadensten that her son, Maximus, was refused treatment by defendant South County Hospital based upon factors of financial ability, payment status, insurance coverage, race or national origin. [Second Amended Complaint]

47. There is no allegation by plaintiff Linda Wadensten that her son, Maximus, was, in fact, neither seen nor physically examined by a healthcare provider at defendant South County Hospital on October 25, 2003. [Second Amended Complaint, Linda Wadensten Answers to Interrogatories, Linda Wadensten's Deposition Testimony]

48. There is no allegation by plaintiff Linda Wadensten that defendant South County Hospital failed to provide medical or healthcare services, or failed to care for or treat her son, Maximus, in a manner similar to other patients presenting to the Hospital's emergency department. [Second Amended Complaint]

49. Plaintiff Maximus Wadensten did not undergo a CT head scan at the time of his initial visit to the emergency department of defendant South County Hospital on October 25, 2003. [South County Hospital Emergency Department Record]

50. Not every one of the approximately 506 patients age eighteen years or younger who presented to defendant South County Hospital's emergency department with complaints of minor head trauma from January 1, 2001 to August 29, 2005 underwent a CT scan of the head. [South County Hospital's Supplemental Answer to Interrogatory #17]

51. Plaintiff Maximus Wadensten was seen, evaluated, examined, and treated by a Registered Nurse Practitioner at the time of his initial visit to the emergency department of defendant South County Hospital on October 25, 2003. [South County Hospital Emergency Department Record]

52. Other patients age eighteen years or younger who presented to defendant South County Hospital's emergency department with complaints of minor head trauma from January 1,

2001 to August 29, 2005 were seen, evaluated, examined, and treated by a Registered Nurse Practitioner. [South County Hospital's Supplemental Answer to Interrogatory #17]

Respectfully submitted by:
Defendant,
**South County Hospital**
By its Attorneys,
**RATCLIFFE BURKE HARTEN & ELIAS, LLP**

Jay M. Elias, Esquire (#3050)
Paul F. Galamaga, Esquire (#5803)
1600 Financial Plaza
Providence, RI 02903
401.331.3400
401.331.3440 [Fax]

**CERTIFICATION**

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 7 day of April 2006, to the following:

Amato A. DeLuca, Esquire
Miriam Weizenbaum, Esquire
DeLuca & Weizenbaum, Ltd.
199 North Main Street
Providence, RI 02903

Mark T. Nugent, Esquire
Paul V. Sullivan, Esquire
Morrison, Mahoney, LLP
121 South Main Street, Suite 600
Providence, RI 02903

Peggy Medaglia

Memo.Motionfor SummaryJudgment.04.03.06.doc